STEPHENS, Judge.
 

 *72
 
 In this case, a search warrant was issued based on an affidavit that failed to specify when an informant witnessed Defendant's allegedly criminal activities. Such an affidavit contains insufficient information to establish probable cause and thus cannot support the issuance of a search warrant. Accordingly, we reverse the trial court's order denying Defendant's motion to suppress evidence discovered as a result of the execution of that search warrant and vacate the judgment entered upon Defendant's subsequent guilty pleas.
 

 Factual and Procedural Background
 

 This case arises from the execution of a search warrant applied for and granted to Detective Kevin Putnam of the Gastonia Police Department ("GPD") on 26 November 2012. On that date, Putnam
 
 *73
 
 sought and received a warrant to search the residence of Defendant Don Newton Brown at 1232 North Ransom Street in Gaston County for counterfeit currency and related items, as well as firearms. The application included an affidavit by Putnam that averred,
 
 inter alia,
 
 Putnam had received a counterfeit $100 bill from an informant who claimed it had been obtained from Brown's home, where the informant also claimed to have seen firearms, including a handgun. As a result of items
 
 *84
 
 found during the search of Brown's residence, he was indicted on one count each of possession of a stolen motor vehicle, possession of five or more counterfeit instruments, and possession of a firearm by a felon.
 

 On 7 January 2013, Brown moved to suppress the fruits of the search of his residence, asserting that "[t]hat the application and warrant fail to contain the information necessary to meet the 'lack of staleness' requirement...." The motion to suppress was heard in the Gaston County Superior Court on 18 March 2013 before the Honorable James W. Morgan, Judge presiding. At the hearing, Putnam was the sole witness, testifying about what he intended for the affidavit to state in an effort to clarify vague language about when the informant obtained his information regarding Brown's allegedly criminal activities. The trial court denied Brown's motion in open court and entered a written order memorializing the ruling on 19 March 2013 ("the suppression order").
 

 The case came on for trial at the 20 July 2015 criminal session of Gaston County Superior Court, the Honorable Jesse B. Caldwell III, Judge presiding. Brown pled guilty to all three charges against him, specifically reserving his right to appeal the suppression order. The trial court consolidated the convictions for judgment, imposing a term of 25-39 months in prison. Brown gave notice of appeal in open court.
 

 Discussion
 

 On appeal, Brown argues that the trial court erred in (1) denying his motion to suppress the evidence discovered as a result of the search, (2) calculating his prior record level, and (3) including a civil judgment for restitution in the written judgment which was not part of the court's oral ruling. We reverse the order denying the motion to suppress and vacate the judgment entered upon Brown's subsequent guilty pleas. As a result, we do not consider Brown's other arguments.
 

 I. Motion to suppress
 

 Brown argues that the trial court erred in denying his motion to suppress. Specifically, Brown contends that Putnam's affidavit in support of his search warrant application was conclusory and lacked sufficient
 
 *74
 
 details about when the informant ("the CRI") acquired the information that formed the basis of Putnam's warrant request. We agree.
 

 A. Standard of review on appeal
 

 The scope of appellate review of a ruling upon a motion to suppress is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.
 

 State v. Johnston,
 

 115 N.C.App. 711
 
 , 713,
 
 446 S.E.2d 135
 
 , 137 (1994) (citation and internal quotation omitted). "The trial court's conclusions of law ... are fully reviewable on appeal."
 
 State v. Hughes,
 

 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000). "An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence."
 
 Johnston,
 

 115 N.C.App. at 713
 
 ,
 
 446 S.E.2d at 137
 
 (citations omitted).
 

 This deference, however, is not without limitation. A reviewing court has the duty to ensure that a [judicial officer] does not abdicate his or her duty by "mere[ly] ratif[ying] ... the bare conclusions of [affiants]." [
 
 Illinois v.
 
 ]
 
 Gates,
 
 462 U.S. [213,] 239, 103 S.Ct. [2317,] 2333, 76 L.Ed.2d [527,] 549 [ (1983) ];
 
 see
 

 State v. Campbell,
 

 282 N.C. 125
 
 , 130-31,
 
 191 S.E.2d 752
 
 , 756 (1972) ("Probable cause cannot be shown by affidavits which are purely conclusory...." (citation and internal quotation marks omitted));
 
 see also
 

 United States v. Leon,
 

 468 U.S. 897
 
 , 914,
 
 104 S.Ct. 3405
 
 , 3416,
 
 82 L.Ed.2d 677
 
 , 693 (1984) ("[C]ourts must ... insist that the [judicial officer] purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police.") (citations and internal quotation marks omitted),
 
 superseded in part by
 
 Fed.R.Crim.P. 41(e).
 

 State v. Benters,
 

 367 N.C. 660
 
 , 665,
 
 766 S.E.2d 593
 
 , 598 (2014).
 

 *85
 

 B. Standard and scope of review at the suppression hearing
 

 The question for a trial court
 

 reviewing the issuance of a search warrant is whether there is substantial evidence in the record supporting the
 
 *75
 
 [judicial officer's] decision to issue the warrant. North Carolina [employs] the totality of the circumstances approach for determining the existence of probable cause.... Thus, the task of the issuing judicial officer is to make a common-sense decision based on all the circumstances that there is a fair probability that contraband or evidence of a crime will be found in a particular place.
 

 State v. McCoy,
 

 100 N.C.App. 574
 
 , 576,
 
 397 S.E.2d 355
 
 , 357 (1990) (citations and internal quotation marks omitted).
 

 Because its duty in ruling on a motion to suppress based upon an alleged lack of probable cause for a search warrant involves an evaluation of the judicial officer's decision to issue the warrant, the trial court should consider only the information before the issuing officer. Thus, although our appellate courts have held that "the scope of the court's review of the [judicial officer's] determination of probable cause is not confined to the affidavit alone[,]" additional information can only be considered where
 

 [t]he evidence shows that the [judicial officer]
 
 made his notes on the exhibit contemporaneously from information supplied by the affiant under oath,
 
 that the paper was not attached to the warrant in order to protect the identity of the informant, that the notes were kept in the magistrate's own office drawer, and that the paper was in the same condition as it was at the time of the issuance of the search warrant.
 

 State v. Hicks,
 

 60 N.C.App. 116
 
 , 119, 120-21,
 
 298 S.E.2d 180
 
 , 183 (1982) (internal quotation marks omitted; emphasis added),
 
 disc. review denied,
 

 307 N.C. 579
 
 , 578,
 
 300 S.E.2d 553
 
 (1983). In such circumstances, an appellate court may consider whether probable cause can be supported by the affidavit in conjunction with the aforementioned notes.
 
 Id.
 
 at 121,
 
 298 S.E.2d at
 
 183 ; see also N.C. Gen.Stat. § 15A-245(a) (2015) ("Before acting on the application, the issuing official may examine on oath the applicant or any other person who may possess pertinent information,
 
 but information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official.
 
 ") (emphasis added). Outside of such contemporaneously recorded information in the record, however, it is error for a reviewing court to "rely [ ] upon facts elicited at
 
 *76
 
 the [suppression] hearing that [go] beyond 'the four corners of [the] warrant.' "
 
 See
 

 Benters,
 

 367 N.C. at 673
 
 ,
 
 766 S.E.2d at 603
 
 .
 

 C. "Staleness" of information supporting issuance of a search warrant
 

 The concern regarding the possible "staleness" of information in an affidavit accompanying a search warrant application arises from the requirement that
 

 proof of probable cause must be established by facts so closely related to the time of issuance of the warrant so as to justify a finding of probable cause at that time. The general rule is that no more than a reasonable time may have elapsed. The test for staleness of information on which a search warrant is based is whether the facts indicate that probable cause exists at the time the warrant is issued. Common sense must be used in determining the degree of evaporation of probable cause. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock.
 

 As a general rule, an interval of two or more months between the alleged criminal activity and the affidavit has been held to be such an unreasonably long delay as to vitiate the search warrant.
 

 State v. Lindsey,
 

 58 N.C.App. 564
 
 , 565-66,
 
 293 S.E.2d 833
 
 , 834 (1982) (citations, internal quotation marks, and ellipsis omitted; emphasis added). However, where the alleged criminal activity has been observed within a day or two of the affidavit and warrant application, the information is generally not held to be stale.
 
 See, e.g.,
 

 *86
 

 State v. Walker,
 

 70 N.C.App. 403
 
 , 405,
 
 320 S.E.2d 31
 
 , 33 (1984) (upholding a search warrant for a location where an informant had seen marijuana within the past 48 hours);
 
 State v. Barnhardt,
 

 92 N.C.App. 94
 
 , 97,
 
 373 S.E.2d 461
 
 , 463 (upholding a search warrant for a location where an informant had seen cocaine within the past 24 hours),
 
 disc. review denied,
 

 323 N.C. 626
 
 ,
 
 374 S.E.2d 593
 
 (1988).
 

 D. Analysis
 

 Here, in support of his warrant application, Putnam submitted an affidavit stating:
 

 In the past 48 hours, Det. Putnam spoke with a person whose name cannot be revealed. This person has concern
 

 *77
 

 for their
 
 [sic]
 
 safety, and Det. Putnam feels this person would be of no further value to law enforcement if their
 
 [sic]
 
 true identity was revealed. For the remainder of this application Det. Putnam will refer to this person as "CRI # 1095." CRI # 1095 has been in contact with Don Brown and has provided Det. Putnam with a counterfeit $100 bill that came from 1232 N. Ransom St. Det. Putnam verified that this is the addess [sic] of Don Newton Brown. Don Brown resides at this residence with a black female by the name of Kisha Harris. The house is also frequented by Paquito Brown and Don ... Brown. Don Brown is known to have firearms and the CRI stated that Don Brown has been seen with a handgun.
 

 In the past 48 hours, Det. Putnam spoke to Special Agent Rumney, United States Secret Service (USSS), Charlotte Field Office. Agent Rumney conducted a couneterfeit [sic] (CFT) note search on the serial number provided by CRI # 1095. The serial [sic] number is of record with the USSS with passes having been conducted in the Gaston County area in 2005 and 2006.
 

 Furthermore, SA Rumney (USSS) stated that Don Brown is of record with the USSS from a previous counterfeit case involving the manufacturing a[sic] passing of CFT Federal Reserve Notes (FRNS) in 2005 and 2006 in Gaston County and surrounding counties.
 

 Additionally, SA Rumney (USSS) stated that in Nov. 2010, he interviewed Paquito Rafeal Brown, nephew of Don Brown, at the Gaston County Jail, after P. Brown was found to be in possession of a CFT $100 FRN. A CFT FRN inquiry on the serial number in P. Brown's possession matched those involved in the 2005-2006 counterfeit case involving Don Brown.
 

 (Emphasis added).
 

 At the suppression hearing, Putnam testified that what he
 
 meant
 
 to say in the first paragraph of the affidavit was both (1) that the CRI told Putnam the information about Brown within 48 hours of applying for the warrant and also (2) that the CRI had obtained the counterfeit money within that time period. At the hearing, as on appeal, Brown did not dispute that Putnam
 
 intended
 
 to say that the CRI had gathered the information he gave Putnam within 48 hours of the warrant application.
 

 *78
 
 Instead, he argued that: (1) Putnam's affidavit did not state when the CRI obtained the information about Brown, making it impossible to evaluate the information's staleness; and, (2) in ruling on the question of staleness, the trial court should not consider Putnam's hearing testimony about what he intended to say in the affidavit:
 

 .... Now, I understand [Putnam's] explanation is that he meant this to say that all of that occurred within 48 hours. Any independent person reading [the affidavit] has no way of understanding that. That's not what-that's not what's written here, that's not what's understood by any independent person reading this. There is no way that occurs.
 

 There is no information in this affidavit as to when that information the CRI supposedly gave this officer, there is no information about when that information was gathered by the CRI, anything. All we know is when that CRI told that officer that information.
 

 ....
 

 As the [c]ourt is aware, the magistrate is stuck with what-the magistrate and this [c]ourt are stuck with what's in the application in this writing unless they reduce or record any other information, or put it on
 
 *87
 
 the search warrant, anything like that. None of that occurred in this case. When any independent third[ ]party reads this application they [sic] have no idea when that information was gathered. If you read the warrant actually it looks like it could have been from 2005 through 2010, just as readily as it was supposedly from what the officer said that day. That's what he put in the application. Any independent third[ ]party doesn't have the information necessary to make a decision to issue a valid warrant.
 

 The State, in contrast, "contend[ed] [Putnam] can explain what he put in the affidavit.... This would go to explain his writing with regard to the affidavit and what sources he relied on."
 

 The trial court denied Brown's motion in open court and entered a written order memorializing the ruling on 19 March 2013. That order contains the following findings of fact:
 

 1. On November 26, 2012, Detective Putnam obtained a search warrant from a Gaston County Magistrate related to
 
 *79
 
 this matter, a copy of said search warrant was attached to [the] defendant's motion to suppress.
 

 2. Detective Putnam stated in said application for search warrant that in the past 48 hours Detective Putnam had spoken with a confidential informant. That the confidential informant had given him a counterfeit $100 bill that had come from 1232 North Ransom Street, an address verified to be that of the defendant.
 

 3.
 
 Detective Putnam testified that
 
 the 48 hours referred to conversations with the confidential informant occurring on November 23rd, November 24th, and November 26th.
 

 4. Further, Detective Putnam spoke with Special Agent Rumney, of the United States Secret Service, regarding connections between the counterfeit note and prior investigations between 2005 and 2010, which referred to the defendant.
 

 (Emphasis added). As a result of these factual findings, the court concluded that the motion should be denied because, "under the totality of the circumstances[,] there is a substantial basis for the magistrate's finding of probable cause...."
 

 The suppression order clearly indicates that the trial court
 
 did
 
 consider Putnam's hearing testimony about what he intended the affidavit to mean-evidence outside the four corners of the affidavit and not recorded contemporaneously with the magistrate's consideration of the application-in determining whether a substantial basis existed for the magistrate's finding of probable cause. As noted
 
 supra,
 
 this was error.
 
 See
 
 N.C. Gen.Stat. § 15A-245(a) ;
 
 see also
 

 Benters,
 

 367 N.C. at 673
 
 ,
 
 766 S.E.2d at 604
 
 . More importantly, however, a plain reading of the order indicates a more significant error: the trial court
 
 did not
 
 resolve the critical issue of whether Putnam's affidavit could be fairly read as stating that
 
 the CRI obtained the information allegedly incriminating Brown within 48 hours of the warrant application.
 
 Our case law makes clear that it cannot.
 

 Regarding staleness, we find the wording of the affidavit here strikingly similar to that in
 
 State v. Newcomb:
 

 .... Within the past five days from [the date of the warrant application], the person who I will refer to as "He," regardless of the person's sex, contacted me. This person offered
 
 *80
 
 his assistance to the City-county vice unit in the investigation of drug sales in the Burlington-Alamance County area. This person told myself [sic] that he had been inside the residence described herein being Rt. 8, Box 122, Lot # 82 County Club Mobile Home Park, Burlington, where he observed a room filled with marijuana plants. He stated that the suspect Charles Wayne Newcomb was maintaining the plants....
 

 84 N.C.App. 92
 
 , 93,
 
 351 S.E.2d 565
 
 , 566 (1987). As did Putnam here, the officer in
 
 Newcomb
 
 "failed to state ... the time the informant's observations were made."
 
 Id.
 
 at 93-94,
 
 351 S.E.2d at 565
 
 . Rather, as in Putnam's affidavit, the affidavit in
 
 Newcomb
 
 only provided information regarding the time when the informant spoke to the officer.
 

 Id.
 

 In determining that this "bare-bones affidavit" contained insufficient information
 
 *88
 
 to establish probable cause and support the issuance of a search warrant, this Court observed that
 

 [t]he information [the informant] supplied is sparse. His statement gives no details from which one could conclude that
 
 he had current knowledge of details or that he had even been inside the defendant's premises recently.
 
 The affidavit contains a mere naked assertion that the informant
 
 at some time
 
 saw a 'room full of marijuana' growing in [the] defendant's house.
 

 Id.
 
 at 95,
 
 351 S.E.2d at 567
 
 (emphasis added). Compare
 
 id
 
 .
 
 with
 

 Walker,
 

 70 N.C.App. at 405
 
 ,
 
 320 S.E.2d at 33
 
 (upholding search warrant based upon an affidavit stating,
 
 inter alia
 
 , "the informant stated he had been in [the] defendant's house within the past 48 hours and had seen marijuana") and
 
 Barnhardt,
 

 92 N.C.App. at 97
 
 ,
 
 373 S.E.2d at 463
 
 (upholding search warrant based upon an affidavit stating,
 
 inter alia
 
 , "cocaine was seen in the residence located at 914 South Carolina Ave. by the confidential informant within the past 24 hours"). We cannot distinguish the staleness of the CRI's information contained in Putnam's affidavit from that in
 
 Newcomb
 
 . Accordingly, we reverse the trial court's suppression order and vacate the judgment entered upon Brown's subsequent guilty pleas. In view thereof, it is unnecessary to address Brown's remaining arguments.
 

 ORDER REVERSED; JUDGMENT VACATED.
 

 Chief Judge McGEE and Judge DAVIS concur.