IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-311

No. COA20-650

Filed 6 July 2021

Cleveland County, Nos. 17 CRS 56572, 19 CRS 1728

STATE OF NORTH CAROLINA,

v.

WILLIAM MAURICE LOGAN, Defendant.

Appeal by defendant from judgment entered 30 October 2019 by Judge Gregory R. Hayes in Cleveland County Superior Court. Heard in the Court of Appeals 26 May 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph E. Elder, for the State.*

*W. Michael Spivey for Defendant-Appellant.*

CARPENTER, Judge.

¶ 1 William Maurice Logan ("Defendant") appeals from judgment entered upon a jury's verdict finding him guilty of possession of a firearm by a felon pursuant to N.C. Gen. Stat. § 14-415.1 and attaining habitual felon status pursuant to N.C. Gen. Stat. § 14-7.1. On appeal, Defendant argues the trial court erred by denying his motion to suppress evidence obtained by a search warrant that was based on stale information, unsupported by probable cause, and overbroad. For the following reasons, we reverse the trial court's ruling on Defendant's motion to suppress, vacate the judgment, and

grant Defendant a new trial.

## I. Factual & Procedural Background

The evidence at trial tended to show the following: at approximately 2:48 a.m. on 17 December 2017, officers from the Shelby Police Department were dispatched to the business address of 801 South Lafayette Street in Shelby, North Carolina, in response to a citizen's service call regarding a "loud noise" complaint.

At about 2:53 a.m., Detective Brandon Smith ("Detective Smith"), the lead officer on the case, and Officer Brent Walker ("Officer Walker") arrived at the address in response to the call. The officers parked across the street "[b]ecause the parking lot of the building was packed with other vehicles." As the officers reached the parking lot, they heard loud music and detected "a strong odor of burnt marijuana" coming from the building. Detective Smith testified that there were approximately one hundred people in the building before the officers were able to enter and secure it. Defendant corroborated this estimate in his affidavit in support of the motion to suppress by stating that on the evening in question, he "opened [his] place of business to be used as a venue for a party and had over one hundred guests . . . come."

Defendant approached the officers as they walked into the parking lot of 801 South Lafayette Street; he told them several times it was "his building," and he was throwing a party. In his affidavit, Defendant declared he was "the lawful occupant/tenant of the premises" located at that address, and he used the building as

an "auto detail shop." The officers informed Defendant that their "reason for being there was the noise ordinance." Defendant responded that he would "try to get the music turned down." The officers advised Defendant that they would have to further investigate the issue of the marijuana odor. Defendant did not consent to the officers searching the building. Detective Smith then called Sergeant Gabe McKinney ("Sergeant McKinney") on the dispatch radio and requested that he come to the location and "assist with the application of a search warrant." As they prepared to apply for the warrant, Defendant ran to the door of the building and told the attendees, "[l]ock the door, don't let anybody in." An attendee locked the door from the inside.

¶ 5          Defendant remained outside with Officer Smith and the other officers while the warrant was obtained. Detective Smith and Officer Walker testified that while they were waiting, the officers heard a "metallic bang" come from inside the building. According to Detective Smith, they then saw through a crack in the curtains "flashing lights[,] someone erecting a ladder," and then someone climbing up the ladder.

¶ 6          Approximately twenty to thirty minutes after the officers arrived, they made entry as individuals exited from the door, and secured the building to ensure officer safety. The officers attempted to search consenting individuals as they exited the building; however, because those consenting outnumbered officers, not everyone could be searched. Of the individuals who were searched, no "guns, ammunition,

contraband, or narcotics" were found on their persons.

¶ 7        Sergeant McKinney arrived at the location and spoke with Detective Smith regarding the odor of marijuana. Sergeant McKinney then left the scene to apply for the search warrant with the magistrate's office between 3:30 a.m. and 4:00 a.m. At 4:05 a.m. the same morning, Magistrate Joshua Bridges issued the search warrant. Approximately thirty minutes after Sergeant McKinney had initially arrived at 801 South Lafayette Street, he returned and executed the search warrant. He read the search warrant to Defendant, and officers began to search the building.

¶ 8        During the officers' search, they initially found two firearms in a locked supply closet: a pistol up on a horizontal structural beam above the closet and a shotgun in the corner of the closet floor. Detective Smith testified that this locked supply closet could not be seen through the window from the outside of the building; therefore, it was not the same room in which he saw the ladder being erected. Sergeant McKinney notified Defendant when the first two firearms were located, and Defendant responded that "he didn't know anything about a pistol but did own that shotgun." Defendant made this statement to Sergeant McKinney before Defendant was charged with or arrested for any crimes.

¶ 9        An officer subsequently located two additional firearms "on top of a heater that was suspended from the ceiling" in the same storage room. The officers were not aware of Defendant's convicted felon status until after they conducted the search.

Detective Smith testified during *voir dire* on the motion to suppress that "[o]nce [the officers] had located the firearms in the building [they] called in to dispatch to check and see if [Defendant] had any felony convictions"—it was confirmed that he did.

In addition to the four firearms, the officers also found and seized ammunition, shotgun shells, a glass smoking pipe, a pill bottle containing one white pill, a digital scale with marijuana residue, and a Mason jar containing marijuana residue. Following the search, Defendant was arrested and charged by magistrate's order with one count of possession of a firearm by a felon pursuant to N.C. Gen. Stat. § 14-415.1.

On 19 March 2018, a Cleveland County grand jury indicted Defendant on one charge of possession of a firearm by a felon pursuant to N.C. Gen. Stat. § 14-415.1. Defendant was later indicted for having attained habitual felon status pursuant to N.C. Gen. Stat. § 14-7.1 on 16 September 2019.

On 28 October 2019, Defendant filed a pretrial motion to suppress all evidence obtained as a result of the 17 December 2017 search of 801 South Lafayette Street on the basis that the search warrant lacked sufficient probable cause and violated Defendant's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 19, 20, and 23 of the North Carolina Constitution. He also prayed the court to suppress his arrest for possession of a firearm by a felon, to dismiss his charge of possession of a firearm by a felon, and to suppress any statements made by Defendant in conjunction with or following the

alleged illegal search.

On 28 October 2019, the Cleveland County Superior Court conducted a suppression hearing before the Honorable Gregory Hayes on Defendant's motion to suppress to determine whether the magistrate properly concluded that probable cause was established based on the supporting affidavit to the search warrant. At the conclusion of the hearing, Judge Hayes orally denied Defendant's motion to suppress on the grounds that the State "prove[d] by the preponderance of the evidence that probable cause exist[ed] for the issuance of the search warrant . . . ." On 3 December 2019, the trial court filed a written order on Defendant's motion to suppress (the "Order"), concluding, *inter alia*, that the 17 December 2017 entry and search of Defendant's building was "legal and based on probable cause."

On 29 October 2019, a jury trial began before the presiding judge, Judge Hayes. The jury returned verdicts finding Defendant guilty of possession of a firearm by a felon and attaining habitual felon status. Defendant gave oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction to address Defendant's appeal pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2019) and N.C. Gen. Stat. § 15A-1444(a) (2019).

## III. Issue

The sole issue on appeal is whether the trial court erred in denying Defendant's

motion to suppress evidence obtained pursuant to a search warrant where the supporting affidavit lacked information as to when the alleged events occurred.

## IV. Standard of Review

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "[T]he trial court's conclusions of law are reviewed *de novo* and must be legally correct." *State v. Pickard*, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206, *disc. rev. denied*, 361 N.C. 177, 640 S.E.2d 59 (2006).

## V. Motion to Suppress

Defendant challenges the trial court's denial of his motion to suppress on three separate grounds: (1) the search warrant did not provide sufficient information from which the magistrate could find probable cause; (2) the information contained in the affidavit was stale because the affidavit did not state when the offenses used to establish probable cause occurred; and (3) the search warrant was overly broad because it included firearms and other items in the description of evidence to be seized without providing a reasonable basis for the seizure of such items.

The Fourth Amendment to the United States Constitution, made applicable to

the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV, XIV. Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Article I, Section 20 of the Constitution of North Carolina likewise prohibits unreasonable searches and seizures and requires that warrants be issued only on probable cause" despite its divergent language from the United States Constitution. *State v. Allman*, 369 N.C. 292, 293, 794 S.E.2d 301, 302–03 (2016); *see* N.C. Const. art. I, § 20; *see also* N.C Gen. Stat. § 15A-245 (2019) (describing the information an issuing officer may consider "in determining whether probable exists for the issuance" of a search warrant).

¶ 20    "Probable cause . . . means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender." *State v. Campbell*, 282 N.C. 125, 128–29, 191 S.E.2d 752, 755 (1972) (citation omitted).

¶ 21    North Carolina courts have adopted the "totality of the circumstances" analysis for determining sufficiency of search warrant applications to establish probable cause. *State v. Arrington*, 311 N.C. 633, 642, 319 S.E.2d 254, 260 (1984); *see State v.*

*Walker*, 70 N.C. App. 403, 405, 320 S.E.2d 31, 32 (1984). Under the "totality of the circumstances" test, the magistrate's task in issuing a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983) (citation omitted); *see also Arrington*, 311 N.C. at 638, 319 S.E.2d at 257–58. Thus, in applying the "totality of the circumstances" test, a reviewing court must determine "whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." *State v. Beam*, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989).

¶ 22 Under North Carolina law, an application for a search warrant must meet certain requirements. *See* N.C. Gen. Stat. § 15A-244 (2019). One such requirement is "each application . . . must be made in writing upon oath or affirmation." *Id.* Furthermore, each application must contain:

> (1) The name and title of the applicant; and
> (2) A statement that there is probable cause to believe that items subject to seizure under [N.C. Gen. Stat. §] 15A-242 may be found in or upon a designated or described place, vehicle, or person; and
> (3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe

> that the items are in the places or in the possession
> of the individuals to be searched; and
>
> (4)    A request that the court issue a search warrant
> directing a search for and the seizure of the items in
> question.

N.C. Gen. Stat. § 15A-244(1)–(4). Additionally, our case law indicates that an affidavit supporting a search warrant application "is sufficient if it supplies reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender." *State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971), *disc. rev. denied sub nom. Vestal v. North Carolina*, 414 U.S. 874, 94 S. Ct. 157, 38 L. Ed. 2d 114 (1973).

It is well-established in North Carolina that "a magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a warrant." *State v. Sinapi*, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005). However, "[b]efore a search warrant may be issued, proof of probable cause must be established by facts so closely related to the time of issuance of the warrant so as to justify a finding of probable cause at that time." *State v. Lindsey*, 58 N.C. App. 564, 565, 293 S.E.2d 833, 834 (1982).

### A. Four Corners of Affidavit & Lack of a Temporal Component

In his first argument, Defendant contends that "[t]he circumstances set forth

in the search warrant were not sufficient to permit the magistrate to arrive at a common-sense decision that there was a fair probability that contraband or evidence of a crime would be found in [his] building." Specifically, Defendant argues that the affidavit's absence of information as to "*when* the officers smelled marijuana" prevented the magistrate from making "a reasoned determination" that there was probable cause to issue the search warrant. Hence, the "trial court cured the deficiencies" of the affidavit by relying on information outside the four corners of the search warrant to find probable cause. The State argues the trial court's order denying Defendant's motion to suppress was not improperly based on evidence outside of the four corners of the warrant application. And even if the court did err in relying on evidence beyond the affidavit, the State argues "the remaining findings of fact support a conclusion that the warrant was issued based on probable cause."

¶ 25    The State correctly asserts in its brief that Defendant failed to preserve the issue of "staleness" for appellate review; however, because the issues—whether the trial court considered only the four corners of the affidavit, and whether the affidavit contained current information upon which proximate cause could be found—are inexorably intertwined in this case, we consider the arguments together. Although the affidavit failed to provide any reference of time to indicate when the alleged facts occurred, the State contends "the magistrate was permitted to infer that the officers' observations occurred shortly before [Sergeant] McKinney applied for a search

warrant" at around 4:00 a.m. due to "the nature of the investigation and the early

hour at which [Sergeant] McKinney appeared to apply for the search warrant . . . ."

After careful review, we agree with Defendant that the affidavit in support of

the search warrant application did not provide sufficient facts from which the

magistrate could conclude there was probable cause because it did not specify when

the purported events occurred nor did it indicate sufficient facts from which the

magistrate could reasonably infer the timing of such events; therefore, for the reasons

set forth below, the search warrant obtained as a result of the affidavit was invalid

and resulted in an unreasonable search and seizure. *See* U.S. Const. amend. IV; N.C.

Const. art. I, § 20.

In addition to ensuring an application for a search warrant meets the

requirement imposed in N.C. Gen. Stat. § 15A-244, the issuing official is charged with

verifying the basis for the issuance of a search warrant is justified. As part of this

duty,

> the issuing official may examine on oath the applicant or
> any other person who may possess pertinent information,
> *but information other than that contained in the affidavit*
> *may not be considered . . .* in determining whether probable
> cause exists . . . unless the information is either recorded
> or contemporaneously summarized in the record or on the
> face of the warrant by the issuing official.

N.C. Gen. Stat. § 15A-245(a) (emphasis added). Similarly, our Supreme Court has

affirmed that a trial court may not consider facts "beyond the four corners" of a search

warrant in determining whether a search warrant was supported by probable cause at a suppression hearing. *State v. Benters*, 367 N.C. 660, 673, 766 S.E.2d 593, 603 (2014) (internal quotation marks omitted). Therefore, evidence "outside the four corners" should not be considered by the trial court at a suppression hearing, and any findings of fact made by the trial court referencing such information are considered "immaterial to [the reviewing court's] determination of whether probable cause existed." *State v. Parson*, 250 N.C. App. 142, 154, 791 S.E.2d 528, 537 (2016).

¶ 28     Here, Sergeant McKinney included with his application for a search warrant an affidavit in which he recited his training and experience and swore to the following facts to establish probable cause for the issuance of a search warrant:

> [t]his search warrant pertains to an investigation being conducted by the Shelby Police Department concerning 801 S. Lafayette St. Shelby, NC. Officers were dispatched to 801 S. Lafayette St. in reference to a loud music complaint. Upon Officers Brandon Smith and Officer Brent Walker [sic] arrival they spoke with a William Logan about the loud music. While speaking with Mr. Logan the Officers could smell marijuana coming from inside the business.
>
> Based on the totality of the circumstances[,] Sergeant McKinney believes a reasonable person would suspect that illegal narcotics and drug paraphernalia are being kept at this residence. And a search of this residence is warranted.

Sergeant McKinney described the evidence to be seized as: (1) marijuana; (2) any other controlled substance; (3) currency (domestic or foreign); (4) guns/ammunition; (5) ledgers or any other similar documentation; (6) drug paraphernalia; (7)

documentation to establish residency; (8) any other item of evidentiary value; and (9)

cellular phone. He provided in his application a description of the location and

address of the residence to be searched.

Following the hearing on Defendant's motion to suppress, the trial court made

the following pertinent findings of fact:

> (1) That on December 17, 2017, Officers with the Shelby Police Department (SPD) responded to 801 S. Lafayette Street, Shelby, North Carolina 28150 in reference to a loud noise complaint at approximately 2:48 AM.
>
> (2) Upon Officer Brandon Smith and Officer Brent Walker's arrival, they observed a lot of vehicles in this building[']s parking lot, they heard the loud noise coming from the building and smelled marijuana emitting from the building in question.
>
> (3) While approaching said building, the Officers were approached by the Defendant. The Defendant told the Officers this was his building and he was in control of the building. The Officers informed him of the loud noise complaint and the odor of marijuana coming from the Defendant[']s building.
>
> (4) Officer Smith and Officer Walker contacted other SPD Officers for assistance, including [Sergeant] McKinney who had sixteen years of experience with the SPD, about obtaining a search warrant and assisting them with this investigation.
>
> (5) [Sergeant] McKinney, as well as other Officers, arrived at said location and noticed the smell of marijuana coming from the Defendant[']s building as well.
>
> (6) [Sergeant] McKinney left the scene to obtain a search warrant.
>
> (7) In [Sergeant] McKinney's experience as a law enforcement officer, firearms, ammunition, drugs

including marijuana, and U.S. currency go hand in hand.

(8)   While waiting for the search warrant, Officers with the SPD at 801 S. Lafayette St. were able to make entry to the building and lock down the building for community safety and officer safety while awaiting the search warrant.

(9)   [Sergeant] McKinney applied for the search warrant in writing upon oath that contained the name and title of the applicant, [Sergeant] McKinney on 12/17/2017 for a search of 801 S. Lafayette St., Shelby, NC 28150 and its curtilage. That there was probable cause to search said place due to the smell and odor of marijuana emitting from said building. The place to be searched was properly described. The description of evidence to be seized was properly described and contained items that go hand in hand with marijuana. [Sergeant] McKinney outlined in detail his experience as a law enforcement officer and that the Officers could smell marijuana coming from inside this building in an affidavit establishing probable cause.

(10)  [Sergeant] McKinney returned with a valid search warrant for 801 S. Lafayette St. and executed the search warrant. The search warrant was read to the Defendant. Officers with SPD then began with the search of the building.

(11)  Among other things, while searching said building Officers located documents indicating the building was in the Defendant's control, drug paraphernalia, marijuana, ammunition and four firearms. The firearms located were in a locked room that the Defendant informed the Officers was his room and the room he kept all his supplies. One of the firearms was a loaded shotgun.

(12)  The Defendant also made a statement to [Sergeant] McKinney that he knew about the shotgun located but did not know about the pistol.

(13)  The Defendant made such statements about the

room with the firearms and the admission about knowing about the shotgun on his own free will. The Defendant was not in custody when making such statements and was not being interrogated.

(14) Through the investigation, the Officers learned the Defendant was a convicted felon and was therefore not legally allowed to possess a firearm.

(15) The Defendant was charged according.

¶ 30 Defendant challenges findings of fact 1 through 15 of the Order on the ground the trial court relied on information outside the four corners of the warrant to determine whether the magistrate had probable cause to issue the search warrant. The State concedes that numerous findings of fact are based on information either outside the affidavit or are related to matters that occurred subsequent to the magistrate issuing the search warrant, but nonetheless the State argues that there were sufficient findings of fact to support the trial court's determination that probable cause existed.

¶ 31 Our Supreme Court has stated "[t]he question for review [of a motion to suppress] is whether the ruling of the trial court was correct . . . ." *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650 (1987). Thus, "[t]he crucial inquiry for th[e appellate c]ourt is admissibility and whether the ultimate ruling was supported by the evidence." *Id.* at 290, 357 S.E.2d at 650.

¶ 32 In this case, we need not consider Defendant's specific challenges to the findings of fact and conclusions of law because we conclude the trial court erred in

denying Defendant's motion to suppress and finding probable cause existed for the search warrant based on the affidavit, which lacked sufficient facts to show when the alleged criminal activity occurred. The "ultimate ruling" concluding probable cause existed for the search warrant could not be "supported by the evidence" because the search warrant was based on a facially insufficient and thus deficient supporting affidavit. *See id.* at 290, 357 S.E.2d at 650. However, we note the trial court improperly applied the preponderance of the evidence standard at the hearing on the motion to suppress in determining whether probable cause existed for the search warrant. Moreover, the written order denying the motion to suppress does not reference the "totality of the circumstances" test; rather, it concludes that the search warrant was "valid and legal" pursuant to N.C. Gen. Stat. § 15A-244. Therefore, it is unclear from the record whether the Order reflects the correct standard by which the trial court was to review the search warrant.

¶ 33        Our Court has not previously determined whether a search warrant affidavit based on officers' personal observations is fatally defective where the affidavit fails to specify when the purported facts occurred. In *State v. Campbell*, our Court considered whether an affidavit upon which a search warrant was issued provided "a sufficient basis for the finding of probable cause." 14 N.C. App. 493, 494, 188 S.E.2d 560, 561, *aff'd*, 282 N.C. 125, 191 S.E.2d 752 (1972). Our Court noted the affidavit contained statements that some undisclosed issuing officer on dates

> not stated, upon complaints, the factual basis for which is
> not revealed, made to him by complainants whose identity
> and reliability are not indicated, had found probable cause
> to order the arrest of the persons accused for offenses
> allegedly committed by them at places not specified on
> dates ranging from approximately three to seven weeks
> previous to the date of the affidavit.

*Id.* at 496, 188 S.E2d at 562. We held that the trial court erred in overruling the

defendant's objections to the admission of evidence; thus, we remanded the case for a

new trial. *Id.* at 497, 188 S.E.2d at 562. Since the affidavit did not provide sufficient

facts from which a magistrate could conclude that the purported events had "occurred

on or in connection with the premises to be searched," we did not reach the issue of

whether the lack of timing as to the purported events made the affidavit defective.

*Id.* at 497, 188 S.E.2d at 562.

¶ 34        In *State v. Newcomb*, our Court considered a supporting affidavit which was

based on information obtained by an informant whose credibility was not known. 84

N.C. App. 92, 95, 351 S.E.2d 565, 567 (1987). Moreover, the affiant did not attempt

to corroborate the informant's statements before applying for the search warrant. *Id.*

at 95, 351 S.E.2d at 567. The affidavit did not indicate when the informant had last

been in the residence in which the officer sought to search, nor did it indicate whether

the informant had "current knowledge of details" surrounding the alleged events. *Id.*

at 95, 351 S.E.2d at 567. We held the affidavit failed to demonstrate probable cause,

and our Court refused to apply the *Leon* "good faith exception" because "the officer

took no reasonable steps to comply with the fourth amendment." *Id.* at 96, 351 S.E.2d at 567; s*ee United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); *State v. Welch*, 316 N.C. 578, 342 S.E.2d 789 (1986).

¶ 35 Similarly, in *State v. Brown*, our Court found the affidavit at issue to be substantially similar to the affidavit considered by the *Newcomb* Court because it failed to specify when an informant had witnessed the defendant's purported criminal activities—it only provided timing as to when an officer had spoken to the informant. 248 N.C. App. 72, 77, 79–80, 787 S.E.2d 81, 86–87 (2016). Therefore, we held the information in the affidavit was stale. *Id.* at 80, 787 S.E.2d at 88. Accordingly, we reversed the trial court's order denying suppression and vacated the judgment. *Id.* at 80, 787 S.E.2d at 88.

¶ 36 We are cognizant that the cases of *Newcomb* and *Brown* are distinguishable on the grounds that those cases involved information provided by confidential informants whereas the case *sub judice* concerns information obtained from the personal observations of police officers. We nevertheless find the cases instructive in reaching our conclusion that the search warrant at issue was invalid on the ground the affidavit lacks a sufficient nexus between the odor of marijuana and the building to be searched at the time the warrant was executed. Our holding is also consistent with the rule of law that a magistrate must be able to reasonably infer when alleged facts occurred to find probable cause. *See Lindsey*, 58 N.C. App. at 565, 293 S.E.2d

at 834 ("The test for 'staleness' of information on which a search warrant is based is whether the facts indicate that probable cause exists at the time the warrant is issued."); *State v. Cobb*, 21 N.C. App. 66, 69, 202 S.E.2d 801, 804 (1974) (holding a "magistrate could realistically and reasonably conclude *from the affidavit* that the informer observed the events so recently that reasonable cause existed to believe that the illegal activities were occurring at the time of the issuance of the warrant.") (emphasis added). Other jurisdictions have adopted similar approaches in considering the validity of search warrants where trial courts found probable cause based on affidavits lacking any reference to time. *See United States v. Doyle*, 650 F.3d 460, 475 (4th Cir. 2011) (rejecting the *Leon* good faith exception "where the totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place"); *Herrington v. State*, 287 Ark. 228, 233, 697 S.W.2d 899, 901 (1985) ("An affidavit . . . with absolutely no reference to a time frame, does not provide sufficient information upon which a probable cause determination can be made."); *Garza v. State*, 120 Tex. Crim. 147, 151, 48 S.W.2d 625, 627 (1932) (holding an affidavit was inadequate to support a search warrant where the statements in the affidavit did not "convey[ ] any definite idea as to when the incident [the affiant] describe[d] took place"); *Welchance v. State*, 173 Tenn. 26, 28, 114 S.W.2d 781, 781 (1938) (stating the date of the alleged offense was "essential" in order for the magistrate to determine whether probable

cause existed); *see also United States v. Zayas-Diaz*, 95 F.3d 105, 114–15 (1st Cir. 1996) ("[A] reasonably well-trained law enforcement officer should be familiar with the fundamental legal principle that both the 'commission' and 'nexus' elements of 'probable cause' include an essential temporal component.").

¶ 37        Here, the supporting affidavit to the search warrant application was completely devoid of any indication as to when the events used to establish probable cause occurred. The affidavit did not include the date on which the officers' investigation began, the date when the officers were dispatched to Defendant's address, the date when the officers spoke to Defendant regarding loud music, or the date when the officers smelled marijuana coming from inside Defendant's building. The magistrate could not reasonably conclude that the search warrant application established probable cause because it failed to provide "facts so closely related to the time of issuance of the warrant," as required for a valid search warrant. *See Lindsey*, 58 N.C. App. at 565, 293 S.E.2d at 834. To allow issuance of a search warrant without such essential temporal information would encourage magistrates to make speculations and assumptions regarding probable cause, which would in turn violate constitutional protections against unreasonable searches and seizures. The State has provided no arguments on appeal to justify the officers' otherwise warrantless search. Therefore, we hold the trial court erred in denying Defendant's motion to suppress where the supporting affidavit provided no indication as to when the alleged criminal

activities occurred. The affidavit was invalid; thus, any evidence obtained as a result of the search warrant was erroneously admitted at trial. *See* N.C. Gen. Stat. § 15A-974(a)(1) (2019) ("Upon timely motion, evidence must be suppressed if: [i]ts exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina . . . ."); *see Campbell*, 282 N.C. at 132, 191 S.E.2d at 757.

Because we conclude the trial court erred in denying Defendant's motion to suppress, we do not need to address his remaining argument that the search warrant was overly broad in scope.

## VI. Conclusion

For the foregoing reasons, we reverse the order denying Defendant's motion to suppress, vacate the judgment, and grant Defendant a new trial.

NEW TRIAL.

Judges DILLON and GORE concur