IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-682

Filed 1 October 2024

Mecklenburg County, Nos. 20CRS232458-59, 21CRS10389

STATE OF NORTH CAROLINA

v.

CODIE BRUCE SCHIENE

Appeal by defendant from judgment entered 30 January 2023 by Judge Matt Osman in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 February 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Zachary K. Dunn, and Scott T. Stroud, for the State.*

*BJK Legal, by Benjamin J. Kull, for Defendant.*

PER CURIAM.

Codie Bruce Schiene ("Defendant") appeals from his convictions and judgment entered pursuant to a guilty plea for possession of a firearm by a felon, felonious possession of a stolen firearm, and attaining habitual felon status. Defendant argues the trial court erroneously denied his motion to suppress physical evidence seized from an automobile search. Defendant's argument is based upon the purported similarities between legal hemp and illegal marijuana, particularly the asserted indistinguishable odor when identifying the two substances. We hold the trial court

correctly denied Defendant's motion to suppress and affirm the order.

## I.     Facts and Procedural History

On 22 September 2020, Charlotte Mecklenburg Police Sergeant William Buie ("Sgt. Buie") and Officer Zachary Pegram ("Officer Pegram") were on routine patrol. Around 9:00 p.m., the officers inspected the parking lot of Baymont Inn in the area of Scott Futrell Drive near the airport. Sgt. Buie had previously conducted drug investigations at the Baymont Inn.

The majority of the vehicles in the parking lot were parked in the main parking lot in front of the Baymont Inn. An additional overflow parking lot is located on the side of the hotel. The officers observed two occupants inside a GMC Acadia, which was backed into a parking spot in the far corner of the overflow parking lot on the side of the hotel. Sgt. Buie testified the vehicle was parked in a space that gave the occupants a good view of activity in the parking lot and provided a quick avenue of escape for someone committing criminal acts or activity.

Sgt. Buie parked his marked patrol car about fifteen to twenty feet away from the Acadia, and he and Officer Pegram approached the vehicle on foot. As Sgt. Buie approached the vehicle, he detected an odor of unburned marijuana. Officer Pegram did not initially smell marijuana.

Sgt. Buie approached the passenger side of the Acadia, while Officer Pegram approached the driver's side. Defendant was in the driver's seat of the vehicle. His nephew, Daquon Luckey ("Luckey"), was present in the passenger seat. Sgt. Buie

initiated a conversation with Luckey through the passenger side window. As Luckey rolled the window down to speak with Sgt. Buie, Sgt. Buie identified the odor he had smelled earlier was stronger and coming from inside the Acadia.

Sgt. Buie asked Luckey to exit the vehicle. When Luckey opened the door, the smell became stronger. Within ten seconds of when the officers first approached, Sgt. Buie detained Luckey, and he requested Officer Pegram to go over to the passenger side to detain Defendant. Sgt. Buie then conducted a search of the Acadia and found a firearm, unburned marijuana, digital scales, and an identification of Defendant. The marijuana found was unburned and described as a "leafy green substance in nuggets, in Mason jars, as well as one nugget on the floorboard on the driver's side." There was one Mason jar present on the driver's seat and another inside of a book bag, which dropped out when Defendant exited the vehicle. The Mason jar inside the book bag had a top on it, but the one located on the vehicle's driver's side did not.

Thirty-five minutes after the initial encounter, Sgt. Buie read *Miranda* warnings to Defendant. During those thirty-five minutes, Defendant had made several statements to the officers.

On 12 July 2021, Defendant was indicted on possession of a firearm by a felon, felonious possession of a stolen firearm, and attaining habitual felon status. On 19 August 2022, Defendant filed a motion to suppress the physical evidence seized and all pre-*Miranda* warning statements he a had made during the encounter. On 8 September 2022, Defendant filed an Amended Motion to Suppress. A hearing on the

motion was held on 23 September 2022.

The trial court made the following findings of fact:

> 4. Both Sgt. Buie and Officer Pegram had received training at the CMPD Policy Academy regarding drug identification, including learning to detect the order of both burnt and unburnt marijuana. Sgt. Buie has encountered suspected marijuana in the filed hundreds of times. Officer Pegram has encountered suspected marijuana in the field at least a hundred times.
>
> 5. Neither Sgt. Buie not Officer Pegram have received training to differentiate the odor or appearance of hemp from that of marijuana. Nor do they have field tests to determine the content of THC contained in suspected marijuana while on scene. . . .
>
> 9. In the officers' training and experience, the location and positioning of the GMC Acadia could be indicative of illegal activity because the car was positioned in a way that provided a quick escape, that was distant from the majority of other vehicles in the lot, and that was positioned so that the occupants had full view of anyone, including police, who approached. . . .
>
> 11. As Sgt. Buie approached the car, he smelled an odor of unburned marijuana. The passenger rolled down his window to speak with Sgt. Buie. Upon rolling down the window, Sgt. Buie identified the odor of unburned marijuana as coming from [ ] inside the car. He requested the passenger step out. When the passenger opened the door, the odor of unburned marijuana became stronger.

On 30 September 2022, the trial court denied the motion in part, as to the physical evidence seized, and granted the motion to suppress in part, concerning statements Defendant had made in response to police questioning while in custody, but prior to *Miranda* warnings.

On 30 January 2023, Defendant pled guilty to all three charges. After finding multiple mitigating factors, the court sentenced Defendant to a mitigated active incarceration term of 76 to 104 months. Defendant gave notice of appeal that day.

## II.    Issues

Defendant raises three issues regarding the trial court's denial of his motion to suppress. He first argues the trial court's factual basis for its denial, that Sgt. Buie "smelled an odor of unburned marijuana" or "identified the odor of unburned marijuana", is unsupported by competent evidence because "such feats of sensory-based deductions are humanly impossible." He further asserts, even if the trial court had found that Sgt. Buie smelled an odor of marijuana, reversal is required due to the advent of legalized hemp, as the "odor alone" doctrine is no longer valid. Finally, Defendant argues the trial court erred when it based its ruling on a misapprehension of law, specifically, when it found that *State v. Teague* stands for the proposition that the so-called "odor alone" doctrine has survived the advent of legalized hemp in North Carolina. *See State v. Teague,* 286 N.C. App. 160, 179, 879 S.E.2d 881, 896 (2022). We address each in turn.

## III.    Analysis

The trial court concluded probable cause justified the warrantless search of Defendant's vehicle because Sgt. Buie had "smelled an odor of unburned marijuana." Defendant contends no competent evidence supports any finding of fact that Sgt. Buie

had smelled marijuana, because identifying marijuana by smell alone is impossible. Sgt. Buie himself acknowledged that he cannot differentiate between the odor of legal hemp and illegal marijuana. Defendant argues, because the warrantless search of Defendant's vehicle was unsupported by probable cause, the trial court's order denying his motion to suppress must be reversed and the judgment vacated.

**A. Standard of Review**

In evaluating the denial of a motion to suppress, appellate review "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Brown*, 248 N.C. App. 72, 74, 787 S.E.2d 81, 84 (2016) (citation omitted). Conclusions of law "are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). Additionally, there is "great deference [given] to the trial court's ruling on a motion to suppress[.]" *State v. Parker*, 277 N.C. App. 531, 538-39, 860 S.E.2d 21, 28 (2021) (citation and quotation marks omitted).

**B. Motion to Suppress**

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are pe se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *State v.*

*Degraphenreed*, 261 N.C. App. 235, 241, 820 S.E.2d 331, 336 (2018) (citation and internal quotation marks omitted).

One exception is the motor vehicle exception, which states the "search of a motor vehicle which is on a public roadway or *in a public vehicular area* is not in violation of the [F]ourth [A]mendment if it is based on probable cause, even though a warrant has not been obtained." *State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576 (1987) (emphasis supplied).

Under the motor vehicle exception, "a police officer in the exercise of his duties may search an automobile without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile carries contraband materials." *Parker*, 277 N.C. App. at 539, 860 S.E.2d at 28 (citation omitted). Further, if probable cause justified the search of a vehicle, it justifies the search of every part of the vehicle and its contents. *Id.* A probable cause analysis is based upon the "totality of the circumstances." *See Maryland v. Pringle*, 540 U.S. 366, 371, 157 L. Ed. 2d 769, 775 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." (citations omitted)).

The State put forth other facts supporting probable cause to search the vehicle aside from the alleged odor of marijuana standing alone. First, the location of Defendant's vehicle within the parking lot and the manner it was parked and positioned could indicate illegal activity, particularly at night. Defendant's car was

positioned to provide a quick escape, was distant from most other vehicles in the far corner of the side overflow parking lot, and the occupants had a full view of anyone, including police, who approached. Second, both Sgt. Buie and Officer Pegram had received drug identification training, including learning to detect the odor of both burnt and unburnt marijuana.

As Sgt. Buie approached the car, he smelled an odor of unburned marijuana. Upon Luckey rolling his window down to speak to Sgt. Buie, Sgt. Buie identified the odor of unburned marijuana as coming from inside the car. After requesting Luckey to step out of the vehicle and opening the door, the odor of unburned marijuana became stronger.

These factors are sufficient to support a "reasonable belief" the automobile contained contraband materials. *See Parker*, 277 N.C. App. at 539, 860 S.E.2d at 28. Like the facts in *Parker*, the odor of marijuana and the totality of circumstances gave rise to probable cause. All factors, as observed and detected by the officers, support Sgt. Buie's and Officer Pegram's reasonable suspicions of illegal activity occurring inside of Defendant's car.

Defendant's assertion that the odor of unburned marijuana was the only factual basis to support the denial of the motion to suppress is unsupported by the evidence and findings. Under the totality of the circumstances, the officers had probable cause to perform a warrantless search of Defendant's vehicle. *See Pringle*, 540 U.S. at 371, 157 L. Ed. 2d at 775. The trial court correctly denied Defendant's

motion to suppress in part. Although this holding is sufficient to affirm, we address Defendant's remaining arguments as an alternative basis.

### C. The Validity of the "Odor Alone" Doctrine

Defendant alternatively argues that even if the trial court had found that Sgt. Buie smelled an odor of illegal marijuana, the motion to suppress must be reversed following the advent of legalized hemp. In support, Defendant contends the so-called "odor alone" doctrine is no longer valid, challenging the holding in *State v. Greenwood.* 47 N.C. App. 731, 268 S.E.2d 835 (1980), *aff'd in part and rev'd in part,* 301 N.C. 705, 273 S.E.2d 438 (1981).

In *Greenwood,* this Court mentioned two factors for concluding the odor of marijuana gives rise to probable cause for a warrantless search: (1) evidence properly established that the officer believed she smelled marijuana; and, (2) evidence properly established the officer in question was qualified to identify marijuana by its "distinct odor" alone. *Id.* at 741-42, 268 S.E.2d at 841.

This Court reasoned an "officer, trained in the identification of marijuana by its odor, detected the distinct odor of marijuana emanating from defendant's automobile," so there was a sufficient determination of probable cause. *Id.* However, on another issue, it held "even if the further search after defendant's arrest for possession of marijuana was proper, evidence concerning the pocketbook obtained by a search of its contents should have been suppressed." *Id.* at 742-43, 268 S.E.2d at 842.

When *Greenwood* reached our Supreme Court, it reversed this Court's holding on the latter issue, stating that "defendant failed to show that the seizure and search of the pocketbook infringed upon his own personal rights under the Fourth Amendment." *State v. Greenwood,* 301 N.C. 705, 708, 273 S.E.2d 438, 441 (1981). Following its holding, our Supreme Court stated that this Court "correctly concluded that the smell of marijuana gave the officer probable cause to search the automobile for the contraband drug." *Id.* Defendant argues this statement by the Supreme Court was *obiter dictum*.

Defendant contends the Supreme Court in *Greenwood* made a "passing reference" to this Court's decision regarding the "odor alone" issue, and since the issue was never adjudicated, it is not binding authority. Defendant argues the Supreme Court's holding in *Greenwood* was based upon the understanding law enforcement officers, with sufficient expertise, could reliably detect the distinct odor of marijuana, but this is no longer true. Defendant maintains odor alone cannot justify probable cause, because even if Sgt. Buie had smelled what could have been unburned marijuana, it could have just as easily been unburned hemp.

Defendant's argument that odor alone cannot justify probable cause is not rooted in any federal or state authority, as no binding authority has upheld any such argument. This Court has repeatedly held "[w]hen an officer detects the odor of marijuana emanating from a vehicle, probable cause exists for a warrantless search of the vehicle for marijuana." *State v. Smith*, 192 N.C. App. 690, 694, 666 S.E.2d 191,

194 (2008) (citation omitted). It can hardly be true that our Supreme Court only made a "passing reference" in *Greenwood* regarding the "odor alone" issue, as it explicitly stated that this Court "correctly concluded that the smell of marijuana gave the officer probable cause to search the automobile for the contraband drug." *Greenwood*, 301 N.C. at 708, 273 S.E.2d at 441. It is clear our Supreme Court agrees the odor of marijuana is sufficient for probable cause. *Id.*

More recently this Court addressed and rejected this specific argument in *State v. Little*, No. COA23-410, 2024 N.C. App. LEXIS 680, 2024 WL 4019033, at \*9 (N.C. Ct. App. Sept. 3, 2024). This Court held:

> [D]espite the liberalization of laws regarding possession of industrial hemp, and even if marijuana and industrial hemp smell and look the same, the trial court did not err in concluding there was probable cause for the search of Defendant's vehicle based upon the officer's reasonable belief that the substance he smelled and saw in the vehicle was marijuana.

*Id.*

This holding is also consistent with multiple federal courts in North Carolina, who also examined the impact of the legalization of industrial hemp and the determination of probable cause. "[T]he smell of marijuana alone . . . supports a determination of probable cause, even if some use of industrial hemp products is legal under North Carolina law. This is because only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause." *United States v. Harris,* No. 4:18-CR-57-FL-1, 2019 U.S. Dist. LEXIS 211633, 2019 WL 6704996, at

*3 (E.D.N.C. Dec. 9, 2019) (emphasis supplied) (citation and quotation marks omitted).

The United States District Court for the Western District of North Carolina in *United States v. Brooks* also examined a defendant's arguments asserting the alleged smell of marijuana cannot supply probable cause because it could have been from a legal source, reasoning:

> [Pre]suming, arguendo, hemp and marijuana smell "identical," then the presence of hemp does not make all police probable cause searches based on the odor unreasonable. The law, and the legal landscape on marijuana as a whole, is ever changing but one thing is still true: marijuana is illegal. To date, even with the social acceptance of marijuana seeming to grow daily, precedent on the plain odor of marijuana giving law enforcement probable cause to search has *not* been overturned.

*United States v. Brooks,* No. 3:19-cr-00211-FDW-DCK, 2021 U.S. Dist. LEXIS 81027, 2021 WL 1668048, at *4 (W.D.N.C. Apr. 28, 2021) (footnotes omitted).

In *Teague,* this Court found the reasoning of both *Brooks* and *Harris* persuasive and held: "The passage of the Industrial Hemp Act, in and of itself, did not modify the State's burden of proof at the various stages of our criminal proceeding." *Teague,* 286 N.C. App. at 179, 879 S.E.2d at 896.

Here, as in *Teague,* the smell of marijuana was not the only basis to provide the officers with probable cause. *Id.* at 179 n.6, 879 S.E.2d at 896 n.6 "[T]his is not a case where the detectable odor of marijuana was the only suspicious fact concerning the package. . . . as the totality of the circumstances here was sufficient to give rise

to probable cause. Accordingly, this argument is overruled." *Id.* Defendant has not shown error or prejudice under this argument. *See also State v. Johnson,* 288 N.C. App. 441, 443, 886 S.E.2d 620, 631-32 (2023); *Little*, No. COA23-410, 2024 N.C. App. LEXIS 680, 2024 WL 4019033, at *9.

## IV. Conclusion

We hold the trial court properly denied Defendant's motion to suppress evidence recovered from the search of Defendant's vehicle. Id. Under the totality of the circumstances, sufficient evidence supports probable cause. The trial court's denial of Defendant's motion to suppress is affirmed.

AFFIRMED.

Panel consisting of Judges TYSON, MURPHY and WOOD.

Judge MURPHY concurs in the result only by separate opinion.

MURPHY, Judge, concurring in result only.

Though not considered by the Majority, the trial court made unchallenged, binding findings of fact that law enforcement located Defendant's vehicle in the lot of a hotel "known to be high in violent crime, drug crime, and prostitution" and that "[t]he manner in which the [vehicle] was parked *combined with the high crime nature of the area* and the late hour prompted [Sergeant] Buie to make the decision to approach the car[,]" at which time he detected the odor of marijuana emanating from Defendant's vehicle. *See Teague*, 286 N.C. App. at 167 ("Findings of fact that are not challenged on appeal are deemed to be supported by competent evidence and are binding upon this Court.").

I am bound by the jurisprudential maypole throughout our caselaw that a "high crime area" is a legitimate factor in determining probable cause and not just a legal fiction created to subject the poor and urban areas of our state to an unequal application of the Fourth Amendment. Furthermore, I am bound by our recent decision in *State v. Little* and its application of decisions from our Supreme Court and the Supreme Court of the United States. As a result, when considering the totality of the circumstances in this case, including the high crime area, I would hold the trial court did not err in denying Defendant's motion to suppress. As such, I reluctantly concur in result only.