TYSON, Judge.
 

 *904
 

 *241
 
 Joseph Edward Teague, III ("Defendant") appeals from a judgment entered upon a plea agreement from which he pleaded guilty to a count of possession with intent to sell or distribute marijuana and possession of marijuana. We find no error.
 

 I. Background
 

 On 6 March 2014, Raleigh Police Detective N.D. Braswell applied for a search warrant for the premises located at 621 Manchester Drive in Raleigh, North Carolina. In his probable cause affidavit (the "Affidavit"), submitted to a magistrate, Detective Braswell stated that "he received information from a concerned citizen in the neighborhood who wants to remain anonymous ... that he/she believes narcotics are being sold from 621 Manchester Drive." The Affidavit does not state when Detective Braswell received this information from the anonymous tipster, nor what led the tipster to "believe[ ] narcotics [were] being sold from
 
 *905
 
 621 Manchester Drive." Based upon the anonymous tip, Detective Braswell began an investigation and surveillance of activities occurring at 621 Manchester Drive (the "Residence").
 

 According to the Affidavit, Detective Braswell drove by the Residence and checked the license plate number on a 1989 Buick automobile parked in the driveway through CJLEADs, a law enforcement database. This database search showed the automobile was registered to Laura Teague. In the Affidavit, Detective Braswell stated, "I am familiar with this address and the son of Ms. Teague from my previous assignments as a patrol beat officer with Raleigh Police Department. Joseph Edwards Teague III is the son of Ms. Teague."
 

 Detective Braswell "then checked city of Raleigh databases" and found Defendant had an established waste and water utilities account for the Residence. Detective Braswell "utilized another database and confirmed that [Defendant] lives at 621 Manchester Dr."
 

 After noting the "regular refuse day for [the Residence] is Thursday," Detective Braswell averred in the Affidavit that he had "conducted a refuse investigation in the early morning hours of Thursday." Detective Braswell did not designate what was the date of the Thursday he had conducted the refuse investigation, nor to which "Thursday" he referred. The trash can Detective Braswell searched was located to the left of the driveway of the Residence, "only inches from the curb line." There was not a house or structure located to the left of the Residence. The nearest structure to the left of the Residence was a church at an unspecified distance.
 

 Inside the trash can, Detective Braswell found three white trash bags. Detective Braswell found a red Solo cup containing a green leafy substance; five cut-open food saver bags; and a Ziplock bag containing trace residue "of what appear[ed] to be marijuana" inside the trash bags. Inside one of the trash bags, Detective Braswell also found a Vector butane gas container, which he noted in the Affidavit can be "used to make butane hash oil by extracting the THC from marijuana through the use of butane." According to the Affidavit, Detective Braswell "utilized a narcotics analysis reagent kit to test the substance for marijuana. The green leafy substance field tested positive for marijuana."
 

 In the Affidavit, Detective Braswell also included information about prior criminal charges and case dispositions involving Defendant, including:
 

 [Defendant] was charged with possession [of] marijuana [of] less than one half ounce and possession of drug paraphernalia .... He accepted a plea to possession of drug paraphernalia. [Defendant] was charged with
 
 *906
 
 simple possession of marijuana and possession of drug paraphernalia ... and dismissed by [the] DA. [Defendant] was charged with PWISD marijuana, maintaining a dwelling for controlled substance, and possession of drug paraphernalia .... He accepted a plea to possession of drug paraphernalia.
 

 *242
 
 On 6 March 2014, Detective Braswell submitted an application along with the Affidavit to obtain a warrant to search Defendant's Residence. The magistrate found probable cause and issued the search warrant. Pursuant to that warrant, law enforcement officers searched Defendant's Residence on 7 March 2014, and the following items were seized:
 

 1. 358 grams of marijuana
 

 2. 40.39 grams of marijuana
 

 3. 39 grams butane hash oil
 

 4. $1,015 in United States currency
 

 5. 55 grams of butane hash oil in multi-colored containers
 

 6. 2 empty red plastic containers
 

 7. Time Warner mail addressed to Defendant.
 

 8. 1 gram of butane hash oil on a Silpat.
 

 9. a black pelican case containing a glass marijuana pipe
 

 10. a Mastercool pump
 

 11. a metal bowl, glass bowl, temp, gauge, hot plate, razor blades, and a skinny glass cylinder
 

 12. plastic air tight containers with marijuana residue
 

 13. an assortment of marijuana pipes
 

 On 21 July 2014, a grand jury indicted Defendant for two counts of possession with intent to sell or deliver ("PWISD") marijuana and one count of maintaining a dwelling for controlled substances. The grand jury subsequently returned three superseding indictments. The final superseding indictment charged Defendant with PWISD marijuana, PWISD of a schedule VI controlled substance, maintaining a dwelling for a controlled substance, and felony possession of marijuana.
 

 Prior to trial, Defendant filed a motion to suppress the search of the Residence, and argued the information in Detective Braswell's Affidavit
 
 *907
 
 was insufficient to establish probable cause for the magistrate to issue the search warrant. In his motion to suppress, Defendant asserted the lack of information regarding: (1) when the anonymous tip was made to Detective Braswell; (2) the basis or source of the anonymous informant's information; (3) the date on which Detective Braswell conducted the refuse investigation; (4) the contents of the trash bag being linked to the Residence or Defendant; and, (5) any indication on the trash can connecting it to the Residence.
 

 On 30 October 2015, the trial court conducted a hearing upon Defendant's motion to suppress. The trial court denied Defendant's motion and entered a written order containing the following findings of fact:
 

 1. That a search warrant was granted by a Wake County Magistrate that was dated March 6, 2014 for the search of the dwelling of 621 Manchester Drive, Raleigh, North Carolina 27612.
 

 2. Within the Search Warrant application, there was a probable cause affidavit attached in support of the warrant application.
 

 3. This affidavit given by Detective N. Braswell with the Raleigh Police Department, listed his experience of 12 years as a law enforcement officer and description of the types of previous drug investigations he had been involved in.
 

 4. The affidavit additionally gives information that Detective Braswell received information from an anonymous concerned citizen in the neighborhood of Manchester Drive that they believed narcotics were being sold from 621 Manchester Drive.
 

 5. The affidavit further states as a result of receiving that information, Detective Braswell began his investigation by driving by the residence and inquiring as to who the registered owner was of [the] car in the driveway under the carport of the home.
 

 6. The affidavit lists that the registered owner of the vehicle seen in the driveway as Laura Teague with an address of 6104 Ivy Ridge Road, Raleigh, North Carolina 27612.
 

 7. The affidavit states that Detective Braswell was familiar with this address and the son of Ms. Teague known as
 
 *908
 
 Joseph Teague, III, from previous assignments with the Raleigh Police Department.
 

 8. The affidavit states that Detective Braswell checked City of Raleigh databases and Joseph Teague, III had a solid waste and water account for the address of 621 Manchester
 
 *243
 
 Drive. Detective Braswell also utilized other databases and confirmed that Joseph Teague, III resided at 621 Manchester Drive, Raleigh, North Carolina.
 

 9. The affidavit includes information that Detective Braswell conducted a refuse investigation in the early morning hours of Thursday and that Thursdays are the regular trash collection days for 621 Manchester Drive.
 

 10. Within the affidavit, it does not list a date or any reference to a specific Thursday that the refuse investigation was collected.
 

 11. The affidavit includes that the refuse can was to the left of the concrete driveway only inches from the curb line and there are no other residences to the left of 621 Manchester Drive.
 

 12. The affidavit indicates that the results of the refuse investigation yielded three white trash bags that were tied shut. Within the bags the following was located: marijuana residue that was located within a red solo cup that field tested positive [for] marijuana, five open food saver bags and one Ziplock bag that also contained marijuana residue that also field tested positive for marijuana, and [a] Vector butane gas container.
 

 13. Detective Braswell further lists in the affidavit that Butane gas containers can be used to make butane hash oil by extracting THC from marijuana using the Butane, and that hash oil can be smoked or taken orally.
 

 14. Lastly, Detective Braswell listed the criminal history of Joseph Teague, III, indicating prior drug convictions from 2009 and 2010.
 

 15. The trash pull was done for the purpose of corroborating the information received by Detective Braswell from the concerned citizen and furthering the investigation.
 

 *909
 
 16. While there is no specific date listed for what Thursday the refuse investigation was done, this Court has found that a reasonable magistrate using common sense would indicate that this refuse investigation was done within a relatively short time after receiving the information from the concerned citizen and the beginning of this investigation.
 

 Based upon these findings, the trial court concluded that, under "the totality of the circumstances ... there was sufficient evidence for probable cause for the basis of the Search Warrant for [the Residence,]" and denied Defendant's motion to suppress.
 

 At trial, Defendant's counsel renewed his objection to the search resulting from the search warrant prior to the evidence being introduced at trial. At the close of the State's evidence, Defendant and the State entered into a plea agreement wherein Defendant agreed to plead guilty to PWISD marijuana and felony possession of marijuana, and the State agreed to voluntarily dismiss the remaining charges. Defendant reserved the right to appeal the denial of his motion to suppress.
 

 The trial court fined Defendant $300, sentenced Defendant to a term of six to seventeen months of imprisonment, and suspended the sentence to twenty-four months of supervised probation. Defendant gave oral notice of appeal in open court.
 

 II. Jurisdiction
 

 "An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C. Gen. Stat. § 15A-979(b) (2017). Defendant reserved the right to appeal the trial court's denial of his motion to suppress pursuant to his plea of guilty to the charged offenses. The State does not contest Defendant's right to appeal. This appeal is properly before us.
 

 III. Standard of Review
 

 Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal."
 

 *244
 

 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000). "We review
 
 de novo
 
 a trial court's conclusion
 
 *910
 
 that a magistrate had probable cause to issue a search warrant."
 
 State v. Worley
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 412
 
 , 416 (2017).
 

 IV. Analysis
 

 A. Probable Cause
 

 The Fourth Amendment to the Constitution of the United States requires probable cause must be shown before a search warrant may be issued. U.S. Const. amend. IV. Defendant argues the search warrant to search his Residence was not supported by sufficient probable cause.
 

 To determine whether probable cause existed to issue a search warrant, a reviewing court looks to the "totality of the circumstances."
 
 State v. Arrington
 
 ,
 
 311 N.C. 633
 
 , 641,
 
 319 S.E.2d 254
 
 , 259 (1984) ;
 
 see
 

 Illinois v. Gates,
 

 462 U.S. 213
 
 , 238,
 
 103 S.Ct. 2317
 
 , 2332,
 
 76 L.Ed.2d 527
 
 , 548 (1983). Under the "totality of the circumstances" test, an affidavit submitted to obtain a search warrant provides sufficient probable cause if it provides
 

 reasonable cause to believe that the proposed search ... probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty.
 

 Arrington,
 

 311 N.C. at 636
 
 ,
 
 319 S.E.2d at 256
 
 (citations omitted). "When reviewing a magistrate's determination of probable cause, this Court must pay great deference and sustain the magistrate's determination if there existed a substantial basis for the magistrate to conclude that articles searched for were probably present."
 
 State v. Hunt
 
 ,
 
 150 N.C. App. 101
 
 , 105,
 
 562 S.E.2d 597
 
 , 600 (2002) (citations omitted).
 

 A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than commonsense, manner. [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.
 

 State v. Riggs
 
 ,
 
 328 N.C. 213
 
 , 222,
 
 400 S.E.2d 429
 
 , 434-35 (1991) (alterations in original) (citations and quotation marks omitted).
 

 *911
 

 B. Staleness
 

 To support his argument that probable cause did not exist to support issuance of the search warrant, Defendant asserts that the information obtained from the anonymous tipster and Detective Braswell's investigation of the trash can outside the Residence were potentially stale.
 

 The test for staleness of information on which a search warrant is based is whether the facts indicate that probable cause exists at the time the warrant is issued. Common sense must be used in determining the degree of evaporation of probable cause. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock.
 

 State v. Lindsey
 
 ,
 
 58 N.C. App. 564
 
 , 565-66,
 
 293 S.E.2d 833
 
 , 834 (1982) (citations, internal quotation marks, and ellipsis omitted). "[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant. The continuity of the offense may be the most important factor in determining whether the probable cause is valid or stale."
 
 State v. McCoy,
 

 100 N.C. App. 574
 
 , 577,
 
 397 S.E.2d 355
 
 , 358 (1990) (internal citations omitted).
 

 "[C]ommon sense is the ultimate criterion in determining the degree of evaporation of probable cause."
 
 State v. Pickard
 
 ,
 
 178 N.C. App. 330
 
 , 335,
 
 631 S.E.2d 203
 
 , 207 (2006) (citing
 
 State v. Jones,
 

 299 N.C. 298
 
 , 305,
 
 261 S.E.2d 860
 
 , 865 (1980) ). "Other variables to consider when determining staleness are the items to be seized and the character of the crime."
 
 Id.
 
 at 335-36,
 
 631 S.E.2d at 207
 
 . A defendant's past criminal conduct and reputation for criminal conduct is relevant to whether probable cause exists.
 
 See
 

 *245
 

 State v. Sinapi,
 

 359 N.C. 394
 
 , 399-400,
 
 610 S.E.2d 362
 
 , 365-66 (2005) (recognizing a defendant's drug-related criminal history recited in an officer's affidavit as relevant to finding probable cause to issue a warrant to search the defendant's residence for evidence of drug crimes).
 

 Here, Detective Braswell's Affidavit states, in relevant part:
 

 I have received information from a concerned citizen in the neighborhood who wants to remain anonymous for fear of retaliation that he/she believes narcotics are being sold from [the Residence]. When I received this information I started an investigation.
 

 *912
 
 ...
 

 The regular refuse day for [the Residence] is Thursday. I conducted a refuse investigation in the early morning hours of Thursday and there was a green refuse can to the left of the concrete driveway only inches from the curb line.
 

 Although the Affidavit does not state when or over what period of time the anonymous tipster observed criminal activity at Defendant's Residence, when the tipster relayed this information to police, or the exact date Detective Braswell conducted the refuse search, the Affidavit was based on more than just the information supplied by the anonymous tipster and the information regarding the refuse search. Detective Braswell's Affidavit included details regarding database searches indicating Defendant had a waste and water utility account at the Residence, that Defendant resided at the Residence, that Detective Braswell was familiar with the Residence and Defendant from his previous assignment as a patrol officer. The Affidavit also recounted Defendant's prior charges for possession of drug paraphernalia, PWISD marijuana, and maintaining a dwelling for a controlled substance.
 

 To the extent the information from the anonymous tip may have been stale, it was later corroborated by Detective Braswell's refuse search, in which Detective Braswell found a Solo cup containing marijuana residue, plastic bags containing marijuana residue, and a butane gas container that Detective Braswell specified is consistent with the potential manufacturing of butane hash oil. These averments are sufficient grounds to provide a magistrate with "a reasonable ground to believe ... the proposed search [would] reveal the presence upon the premises" of the drug-crime related items sought in the search warrant.
 
 Lindsey
 
 ,
 
 58 N.C. App. at 565
 
 ,
 
 293 S.E.2d at 834
 
 .
 

 Detective Braswell averred in his Affidavit that "the regular refuse day for [the Residence] is Thursday. I conducted a refuse investigation in the early morning hours of Thursday[.]" Although the Affidavit is not explicit about which "Thursday" Detective Braswell conducted the refuse search, a "common sense" reading of the Affidavit would indicate the "Thursday" referred to by Detective Braswell was the most recent Thursday to 6 March 2017, the date he swore out the Affidavit and submitted the search warrant application.
 
 See
 

 Pickard
 
 ,
 
 178 N.C. App. 330
 
 , 335,
 
 631 S.E.2d 203
 
 , 207.
 

 For purposes of addressing Defendant's argument that Detective Braswell's refuse search was potentially stale, we take judicial notice of
 
 *913
 
 the records of the United States Naval Observatory.
 
 See
 

 State v. Garrison
 
 ,
 
 294 N.C. 270
 
 , 280,
 
 240 S.E.2d 377
 
 , 383 (1978) (taking judicial notice of U.S. Naval Observatory report to affirm nighttime element in burglary conviction). "A court may take judicial notice, whether requested or not." N.C. Gen. Stat. § 8C-1, Rule 201(c) (2017). The 2014 edition of the U.S. Naval Observatory's Nautical Almanac indicates 6 March 2014 was a Thursday. Nautical Almanac Office of the United States Naval Observatory, The Nautical Almanac for the Year 2014 (2014).
 

 A magistrate drawing reasonable inferences from the Affidavit would have a substantial, common-sense basis to conclude the "Thursday" referred to in the Affidavit was the day Detective Braswell swore out his Affidavit and applied for the search warrant. The magistrate could reasonably infer Detective Braswell would not delay in applying for a search warrant given the nature with which marijuana-related evidence may quickly dissipate.
 
 See
 

 Lindsey
 
 ,
 
 58 N.C. App. at 567
 
 ,
 
 293 S.E.2d at 835
 
 (noting that marijuana "can be
 
 *246
 
 easily concealed and moved about and which is likely to be disposed of or used.").
 

 Even if the anonymous tip was potentially stale, the refuse search, Defendant's prior history of drug charges and offenses, and the database searches linking Defendant to the Residence all provided sufficient probable cause to issue the search warrant. Defendant does not contest the legality of the refuse search conducted by Detective Braswell.
 

 The Supreme Court of North Carolina noted in
 
 Sinapi
 
 , a case involving a refuse search for drug-related evidence, that a magistrate may "rely on his personal experience and knowledge related to residential refuse collection to make a practical, threshold determination of probable cause," and he is "entitled to infer that the garbage bag in question came from [the] defendant's residence and that items found inside that bag were probably also associated with that residence."
 
 Sinapi
 
 ,
 
 359 N.C. at 399
 
 ,
 
 610 S.E.2d at 365
 
 (holding that a search warrant was supported by probable cause where the defendant had been previously arrested twice for drug-related offenses and several marijuana plants were discovered in a garbage bag outside the defendant's home).
 

 In addition to our Supreme Court in
 
 Sinapi
 
 , the courts of other jurisdictions have recognized:
 

 that "the recovery of drugs or drug paraphernalia from the garbage contributes significantly to establishing probable cause."
 
 U.S. v. Briscoe
 
 ,
 
 317 F.3d 906
 
 , 908 (8th Cir. 2003) (holding that marijuana seeds and stems found in the defendant's garbage were sufficient, standing alone, to
 
 *914
 
 establish probable cause because "simple possession of marijuana seeds is itself a crime under both federal and state law");
 
 see also
 

 U.S. v. Colonna
 
 ,
 
 360 F.3d 1169
 
 , 1175 (10th Cir. 2004) (holding that evidence of drugs in the defendant's trash cover, while potentially indicating only personal use, was sufficient to establish probable cause because "all that is required for a valid search warrant is a fair probability that contraband or evidence of a crime will be found in a particular place") (quoting
 
 Illinois
 
 ,
 
 462 U.S. at 238
 
 [
 
 103 S.Ct. at 2332
 
 ]
 
 76 L.Ed.2d at
 
 543 ).
 

 State v. Lowe
 
 ,
 
 242 N.C. App. 335
 
 , 341,
 
 774 S.E.2d 893
 
 , 898 (2015),
 
 aff'd in part, rev'd in part on other grounds
 
 ,
 
 369 N.C. 360
 
 ,
 
 794 S.E.2d 282
 
 (2016).
 

 Presuming,
 
 arguendo
 
 , the anonymous tip was so stale as to be unreliable, the marijuana-related items obtained from Detective Braswell's refuse search and attested to in his Affidavit, Defendant's criminal history, and the database searches specifically linking Defendant to the Residence to be searched, provided a substantial basis upon which the magistrate could determine probable cause existed to issue the search warrant of Defendant's Residence, under the totality of the circumstances.
 
 See
 

 Sinapi
 
 ,
 
 359 N.C. at 399
 
 ,
 
 610 S.E.2d at 365
 
 (determining refuse search resulting in evidence of marijuana provided probable cause for search warrant to issue);
 
 see also
 

 Arrington
 
 ,
 
 311 N.C. at 641
 
 ,
 
 319 S.E.2d at 259
 
 (specifying that a court reviewing the existence of probable cause to issue a search warrant is to employ the totality of the circumstances test).
 

 V. Conclusion
 

 The Affidavit and application submitted by Detective Braswell to obtain the warrant to search Defendant's Residence gave the magistrate a substantial basis to conclude probable cause existed to issue the warrant. Recognizing the deference we are to give to the magistrate's determination of probable cause and deferring to the reasonable inferences the magistrate could have made based on the information contained in Detective Braswell's Affidavit, this Court concludes the magistrate had a substantial basis for determining probable cause that the evidence to be searched for and seized was located at Defendant's Residence.
 
 See
 

 Hunt
 
 ,
 
 150 N.C. App. at 105
 
 ,
 
 562 S.E.2d at 600
 
 .
 

 The trial court's order, which denied Defendant's motion to suppress, is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Judges DIETZ and BERGER concur.