IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-584

Filed 6 August 2025

Mecklenburg County, Nos. 22CRS206153-590, 22CRS206155-590

STATE OF NORTH CAROLINA

v.

CLARENCE STEVENS, JR., Defendant.

Appeal by defendant from judgments entered 14 September 2023 by Judge Carla Archie in Superior Court, Mecklenburg County. Heard in the Court of Appeals 27 February 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General John A. Payne, for the State.*

*Arnold & Smith, PLLC, by Pamela L. Williams and Paul A. Tharp, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from judgments convicting him of trafficking in fentanyl and possession of a firearm by felon after entering an *Alford* plea. Defendant asserts the trial court should have granted his motion to suppress as the affidavit supporting the search warrant "failed to establish a nexus between any alleged criminal activity and the residence in question" and was "unsupported by any facts which tend to make the informant's statements credible." We affirm the trial court's order granting in part and denying in part Defendant's motion to suppress.

## I.  Background

On or about 24 February 2022, Detective J.A. Garcia of the Charlotte-Mecklenburg Police Department applied for a search warrant for Defendant's house and two vehicles owned by Defendant, a white Range Rover and a red Corvette.

Detective Garcia's "probable cause affidavit" stated the following information: On 15 February 2022 at about 2:14 am, Charles Mills "was spending the night at his wife's residence[.]" While Mr. Mills and his wife were separated, he was staying at her house that night "due to a recent break-up she had with her ex-boyfriend," Defendant. Defendant arrived at Mr. Mills's wife's house and "began banging on the door, demanding [Mr.] Mills and his wife open the door." They refused to open the door, and Defendant left. Mr. Mills left the house shortly after and he noticed Defendant driving a white Range Rover behind him. Defendant fired a gun at Mr. Mills's vehicle three times and Mr. Mills heard a bullet strike his car. Mr. Mills continued driving and Defendant went the other way after leaving the neighborhood. Mr. Mills texted his wife what happened after the incident.

Mr. Mills's wife showed detectives "surveillance footage of [Defendant] violently kicking her front door on the morning of the incident just prior to the shooting" but the shooting was not captured on video. Mr. Mills's wife showed detectives footage that "appeared" to show Defendant with a black shotgun and she told detectives Defendant "is known to have a black 12-gauge Mossberg shotgun and usually carries a black .40 caliber handgun[.]" The projectile that hit Mr. Mills's car

could not be retrieved since it was "buried in the trunk liner." Detective Garcia also noted that Defendant was a convicted felon at the time of this incident.

On 24 February 2022, "officers observed [Defendant] leaving his residence . . . in his White Range Rover. [Defendant] was in the passenger seat of the Range Rover." Defendant's son was the driver. Defendant was dropped off and the officers arrested him but the firearm was not in Defendant's possession. The Range Rover, which Defendant's son was driving, returned to Defendant's house and an officer "observed [it] pull into the garage and the garage door close" and officers then "knocked on the door and secured the [house] to wait for a search warrant."

That same day a magistrate judge signed the search warrant authorizing officers to search Defendant's house, Range Rover, and Corvette. The warrant also allowed officers to seize property. Officers recovered a handgun, shotgun, 3 rifles, suspected narcotics, plastic baggies, a digital scale, a "baggie with white powder[,]" and some mail with Defendant's name on it from the house.

Defendant was indicted on or about 7 March 2022 for possession of a firearm by a felon, trafficking in drugs, and possession with intent to sell or deliver a controlled substance ("PWISD"). Defendant was indicted by superseding indictment on 3 July 2023 for possession of a firearm by a felon, trafficking in drugs, and PWISD. Defendant filed a motion to suppress the search of his house on 19 June 2023 "because the facts in th[e] case do not give rise to probable cause to search Defendant's residence" in violation of the Fourth and Fourteenth Amendments to the United

States Constitution and Article I, Sections 19, 20, and 21 of the North Carolina Constitution. Defendant filed an amended motion to suppress the search on 11 September 2023 to include the red Corvette listed in the search warrant.

The trial court heard Defendant's motion on 11 September 2023. The court rendered findings of fact at the close of the hearing and denied Defendant's motion to suppress as to the house and the Range Rover but granted the motion as to the Corvette. The trial court entered a written Order on 19 September 2023 concluding there "was probable cause to believe a crime had occurred[,]" Defendant committed the crime, and "evidence of the crime would be inside [Defendant's house] or in the White Range Rover."

On 14 September 2023, Defendant pled guilty in an *Alford* plea to trafficking in fentanyl by possession and possession of a firearm by a felon. The State dismissed the PWISD charge as a part of the agreement. Defendant specifically pled "preserving his right to appeal the motion to suppress the search and seizure of the residence pursuant to the search warrant[.]" The trial court entered judgments that same day and Defendant filed written notice of appeal on 25 September 2023.

## II. Preservation

We must first address whether Defendant preserved his argument regarding the denial of his motion to suppress for appellate review. The State contends he did not, and while Defendant presents this issue last in his brief, we will address it first because if Defendant did not preserve the issue for full review, we must use a different

standard of review. *See State v. Williams*, 291 N.C. App. 497, 501, 895 S.E.2d 912, 916 (2023) ("[O]ur standard of review changes when a motion-to-suppress issue is not preserved." (citation omitted)). Defendant contends the issue is preserved as he filed a timely motion to suppress and preserved his right to appeal the Order in his plea agreement. The State acknowledges Defendant preserved his right to appeal the Order in his plea but contends the issue is not preserved since "the record and transcript do[es] not demonstrate that Defendant objected to the evidence in the search warrant at trial or to the final ruling from the trial court."

Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure states:

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C. R. App. P. 10(a)(1). North Carolina General Statute Section 15A-979(b) states "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C. Gen. Stat. § 15A-929(b) (2023).

> This Court has held that when a defendant intends to appeal from the denial of a suppression motion pursuant to this section, he must give notice of his intention to the prosecutor and to the court before plea negotiations are finalized; otherwise, he will waive the appeal of right provisions of the statute.

*State v. Tew*, 326 N.C. 732, 735, 392 S.E.2d 603, 605 (1990) (citation omitted).

Here, Defendant filed his motion to suppress evidence from the search of the house and Range Rover on 19 June 2023. The trial court denied Defendant's motion on 11 September 2023 and then Defendant's jury trial began. However, on 14 September 2023, Defendant decided to accept the State's plea offer and the jury trial ceased. In the transcript of the plea entered on 14 September 2023, Defendant "pleads preserving his right to appeal the motion to suppress the search and seizure of the residence pursuant to the search warrant." The transcript of the plea was signed by the deputy clerk of superior court, Defendant's attorney, the State, and the trial judge. The State acknowledges this but contends the issue is still not preserved, based on *State v. Golphin*, 352 N.C. 364, 405-06, 533 S.E.2d 168, 198-99 (2000), since Defendant did not object "to the evidence in the search warrant at trial or to the final ruling from the trial court." This Court concluded in *Golphin* that the defendant's "pretrial motion to suppress is not sufficient to preserve for appeal the question of the admissibility of his statement because he did not object at the time the statement was offered into evidence." *Id*. at 405, 533 S.E.2d at 198 (citation omitted).

But *Golphin* is inapposite to this case as *Golphin* involved a verdict and judgment entered after a jury trial and not a guilty plea. *See id*. at 379, 533 S.E.2d at 183. In *Golphin*, the trial court denied the defendant's motion to suppress before the jury trial and then the evidence the defendant had requested to be suppressed was presented at the jury trial without objection from the defendant. *See id*. at 405,

533 S.E.2d at 198-99. The jury then returned a verdict and on appeal the defendant in *Golphin* argued the evidence he sought to suppress was admitted and considered by the jury in error. *See id.* Here, trial did begin on 11 September 2023, but Defendant decided to plead guilty on 14 September 2023, so on appeal we are not considering any issues of evidence admitted at the trial. Instead, Defendant properly filed a motion to suppress the evidence and "g[a]ve notice of his intention to the prosecutor and to the court before plea negotiations [were] finalized[,]" demonstrated by Defendant's preservation of his right to appeal in the transcript of the plea. *Tew*, 326 N.C. at 735, 392 S.E.2d at 605 (citations omitted). In this appeal, we are not considering any argument regarding evidence being improperly presented to the jury or trier of fact so whether Defendant objected to evidence during the beginning of the jury trial is not relevant.[1] This argument is properly preserved for appellate review and we will thus address the merits of the appeal.

### III. Motion to Suppress

Defendant argues "the trial court erred in partially denying Defendant's motion to suppress where the search warrant for Defendant's residence was unsupported by probable cause." (Capitalization altered.) Specifically, Defendant

---

[1] Because Defendant's appeal is based only on the trial court's denial of the motion to suppress and his legal argument that the warrant application did not provide sufficient information to support probable cause for issuance of the search warrant, our record includes only the hearing on the motion to suppress. The transcript filed with this Court covers only the hearing on the motion to suppress and the guilty plea colloquy.

argues "Detective Garcia's affidavit was conclusory because it failed to establish a nexus between any alleged criminal activity and the residence in question" and "Detective Garcia's affidavit is unsupported by any facts which tend to make the informant's statements credible." We disagree and affirm the trial court's Order.

## A. Standard of Review

> The scope of appellate review of a ruling upon a motion to suppress is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.
>
> The trial court's conclusions of law are fully reviewable on appeal. An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence.

*State v. Brown*, 248 N.C. App. 72, 74, 787 S.E.2d 81, 84 (2016) (citations, quotation marks, and ellipses omitted).

Here, Defendant does not challenge any of the findings of fact as unsupported by the evidence, so we must determine if the trial court's findings of fact support its conclusions of law that:

> 1.  There was probable cause to believe a crime had occurred (shooting into occupied vehicle).
>
> 2. There was probable cause to believe that . . . [D]efendant had committed the crime.
>
> 3. There was probable cause to believe that evidence of the

crime would be inside the Hubbard Road residence or in the white Range Rover.

The trial court's order includes the following findings of fact which are not challenged on appeal as unsupported by the evidence, so these facts are binding for purpose of appellate review, *see State v. Ashworth*, 248 N.C. App. 649, 651, 790 S.E.2d 173, 176 (2016) ("Findings of fact that are not challenged on appeal are binding and deemed to be supported by competent evidence." (citation omitted)):

> 1. On February 24, 2022, Charlotte-Mecklenburg Police Department (CMPD) Detective Joseph Garcia applied for and obtained a search warrant from Magistrate F. Wilson to search a residence located at 4402 Hubbard Road in Charlotte, North Carolina.
>
> 2. In addition to the residence, the search warrant also included a 2005 white Range Rover and a 1994 red Chevrolet Corvette, both of which were registered to . . . [D]efendant Clarence Stevens, Jr., date of birth [redacted], at the Hubbard Road address.
>
> 3. The search warrant was supported by an affidavit that included evidence of a crime that occurred on February 15, 2022. The evidence was that Charles Mills was spending the night at his wife's house because she had recently broken up with . . . [D]efendant. When Mills left the house, he observed . . . [D]efendant in a White Range Rover. . . . [D]efendant drove up behind Mills and fired a gun at Mills' car three times. According to Mills' wife, . . . [D]efendant was known to carry a black 12-gauge shotgun and a .40-caliber handgun with an extended magazine that he kept on his person or inside his vehicle.
>
> 4. An arrest warrant was issued for . . . [D]efendant for shooting into an occupied vehicle based on the incident that occurred on February 15, 2022.
>
> 5. In an attempt to serve the arrest warrant on February

24, 2022, CMPD officers were conducting surveillance at 4402 Hubbard Road and observed . . . [D]efendant leave the residence in a white Range Rover. CMPD officers arrested . . . [D]efendant when he exited the Range Rover at an auto body shop located at 2514 Sugar Creek Road in Charlotte and did not find any weapons on . . . [D]efendant.

## B. Nexus Between the House and Criminal Activity

As stated above, Defendant's argument is that the affidavit in support of the application of the search warrant of his house and car was not sufficient for issuance of the search warrant. This Court has explained the proper role of the trial court conducting a suppression hearing in the case of a search after a warrant was issued:

The question for a trial court

> reviewing the issuance of a search warrant is whether there is substantial evidence in the record supporting the judicial officer's decision to issue the warrant. North Carolina employs the totality of the circumstances approach for determining the existence of probable cause. Thus, the task of the issuing judicial officer is to make a common-sense decision based on all the circumstances that there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Because its duty in ruling on a motion to suppress based upon an alleged lack of probable cause for a search warrant involves an evaluation of the judicial officer's decision to issue the warrant, the trial court should consider only the information before the issuing officer. Thus, although our appellate courts have held that the scope of the court's review of the judicial officer's determination of probable cause is not confined to the affidavit alone, additional information can only be considered where

> the evidence shows that the judicial officer made his notes on the exhibit contemporaneously from

- 10 -

information supplied by the affiant under oath, that the paper was not attached to the warrant in order to protect the identity of the informant, that the notes were kept in the magistrate's own office drawer, and that the paper was in the same condition as it was at the time of the issuance of the search warrant.

*State v. Hicks*, 60 N.C.App. 116, 119, 120-21, 298 S.E.2d 180, 183 (1982) (internal quotation marks omitted; emphasis added), *disc. review denied*, 307 N.C. 579, 578, 300 S.E.2d 553 (1983). In such circumstances, an appellate court may consider whether probable cause can be supported by the affidavit in conjunction with the aforementioned notes. *Id.* at 121, 298 S.E.2d at 183; see also N.C. Gen.Stat. § 15A-245(a) (2015) ("Before acting on the application, the issuing official may examine on oath the applicant or any other person who may possess pertinent information, but information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official.") (emphasis added). Outside of such contemporaneously recorded information in the record, however, it is error for a reviewing court to rely upon facts elicited at the suppression hearing that go beyond the four corners of the warrant.

*Brown*, 248 N.C. App. at 74-76, 787 S.E.2d at 85 (citations, quotation marks, brackets, ellipses, and emphasis omitted).

Defendant first contends "Detective Garcia's affidavit was conclusory because it failed to establish a nexus between any alleged criminal activity and the residence in question." Defendant mostly argues the information in the affidavit was stale since the shooting occurred eight to nine days before and "Mr. Mills' statement that

Defendant shot at him while driving a white Range Rover does not establish probable

cause to search Defendant's purported residence." We disagree.

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable searches
> and seizures, shall not be violated, and no warrants shall
> issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be
> searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Probable cause means that there must exist a reasonable

ground to believe that the proposed search will reveal the presence *upon the premises*

*to be searched* of the objects sought and that those objects will aid in the apprehension

or conviction of the offender." *State v. Lindsey*, 58 N.C. App. 564, 565, 293 S.E.2d

833, 834 (1982) (emphasis in original) (citations and quotation marks omitted).

> Before a search warrant may be issued, proof of probable
> cause must be established by facts so closely related to the
> time of issuance of the warrant so as to justify a finding of
> probable cause at that time. The general rule is that no
> more than a "reasonable" time may have elapsed. The test
> for "staleness" of information on which a search warrant is
> based is whether the facts indicate that probable cause
> exists at the time the warrant is issued.

*Id.*

Defendant cites *Brown*, 248 N.C. App. at 76, 787 S.E.2d at 85, to assert "where

the alleged criminal activity has been observed within a day or two of the affidavit

and application, the information is generally not held to be stale." But *Brown* also

states "[a]s a general rule, an interval of two or more months between the alleged

criminal activity and the affidavit has been held to be such an unreasonably long

delay as to vitiate the search warrant." *Id.* (citation omitted). In *Brown*, the affidavit stated, in part,

> [i]n the past 48 hours, Det. Putnam spoke with a person whose name cannot be revealed. This person has concern for their [sic] safety, and Det. Putnam feels this person would be of no further value to law enforcement if their [sic] true identity was revealed. For the remainder of this application Det. Putnam will refer to this person as "CRI # 1095." CRI # 1095 has been in contact with Don Brown and has provided Det. Putnam with a counterfeit $100 bill that came from 1232 N. Ransom St. Det. Putnam verified that this is the addess [sic] of Don Newton Brown. Don Brown resides at this residence with a black female by the name of Kisha Harris. The house is also frequented by Paquito Brown and Don Brown. Don Brown is known to have firearms and the CRI stated that Don Brown has been seen with a handgun.

*Id.* at 76-77, 787 S.E.2d at 86 (ellipses omitted). We noted

> [a]t the suppression hearing, Putnam testified that what he *meant* to say in the first paragraph of the affidavit was both (1) that the CRI told Putnam the information about Brown within 48 hours of applying for the warrant and also (2) that the CRI had obtained the counterfeit money within that time period.

*Id.* at 77, 787 S.E.2d at 86 (emphasis in original). Citing *State v. Newcomb*, 84 N.C. App. 92, 93, 351 S.E.2d 565, 566 (1987), we stated "[a]s did Putnam here, the officer in *Newcomb* 'failed to state the time the informant's observations were made.'" *Id.* at 80, 787 S.E.2d at 87 (ellipses omitted). We concluded "[w]e cannot distinguish the staleness of the CRI's information contained in Putnam's affidavit from that in *Newcomb*" and vacated the judgments. *Id.* at 80, 787 S.E.2d at 88.

Just as in *Brown*, Defendant also heavily relies on *Newcomb*, where the affidavit was based on information obtained from a confidential informant who supplied "sparse" information which "g[a]ve[ ] no details from which one could conclude that he had current knowledge of details or that he had even been inside the defendant's premises recently." *Id.* at 95, 351 S.E.2d at 567. The officer who obtained the search warrant testified that he "'unintentionally and inadvertently' failed to state the reason the informant was reliable and the time the informant's observations were made." *Id.* at 93-94, 351 S.E.2d at 566. He also made no "investigation of [the] defendant or his residence" before applying for the search warrant. *Id.* at 94, 351 S.E.2d at 566. "The affidavit contain[ed] a mere naked assertion that the informant at some time saw a 'room full of marijuana' growing in [the] defendant's house" and "Officer Cockman made no attempt to corroborate the informant's story. He did nothing more than verify that [the] defendant lived in the house." *Id.* at 95, 351 S.E.2d at 567. We noted

> the officer fail[ed] to provide the magistrate with sufficient information from which to find probable cause, fail[ed] to conduct any independent investigation, provide[d] a bare-bones affidavit, and a warrant [was] issued by a Magistrate who, according to the record, assert[ed] that her job is "to find probable cause," and has found probable cause in each of the approximately 300 warrant applications[.]

*Id.* at 96, 351 S.E.2d at 567.

Neither *Brown* nor *Newcomb* are similar to this case. In *Brown*, the problem was that the affidavit did not include sufficient information and the trial court

- 14 -

improperly considered testimony at the hearing which added to the affidavit:

> The suppression order clearly indicate[d] that the trial court *did* consider [Detective] Putnam's hearing testimony about what he intended the affidavit to mean—evidence outside the four corners of the affidavit and not recorded contemporaneously with the magistrate's consideration of the application—in determining whether a substantial basis existed for the magistrate's finding of probable cause.

*Brown*, 248 N.C. App. at 79, 787 S.E.2d at 87 (emphasis in original).  Thus, the magistrate would have had no way of knowing those additional facts when the warrant was issued.  Here, Defendant does not contend that there is any substantial difference between the information in the affidavit and testimony at the hearing, nor that the trial court improperly considered testimony or facts that were not included in the affidavit.

In *Newcomb*, the warrant was issued based on information provided by a confidential informant, and the affidavit omitted any statement regarding the informant's reliability or the timing of the informant's observations.  *See Newcomb*, 84 N.C. App. at 93, 351 S.E.2d at 565-66.  The officer did not investigate the informant's reports before requesting the search warrant, so the only information available in the affidavit was from the confidential informant.

This case differs dramatically from both *Brown* and *Newcomb*.  "Common sense is the ultimate criterion in determining the degree of evaporation of probable cause." *State v. Teague*, 259 N.C. App. 904, 911, 817 S.E.2d 239, 244 (2018) (citations, quotation marks, and brackets omitted).  Here, Detective Garcia thoroughly

investigated the shooting on 15 February 2022, leading up to Defendant's arrest on 24 February 2022 for the shooting. Upon Defendant's arrest, the officers did not find a gun on him, so they believed his gun may be located in either his house or his vehicle. These few days are much less than the "two or three more months between the alleged criminal activity and the affidavit [that] has been held to be such an unreasonably long delay as to vitiate the search warrant." *Brown*, 248 N.C. App. at 76, 787 S.E.2d at 85 (citations omitted). The affidavit in support of the search warrant outlined that Detective Garcia interviewed two separate witnesses who saw Defendant kicking at the door just before shooting at Mr. Mills's vehicle and Detective Garcia watched video footage showing Defendant trying to kick in the door, corroborating the version of events from Mr. Mills and his wife. Detective Garcia also saw footage of Defendant "possessing what appeared to be a black shotgun" and "[d]etectives observed [Defendant] in possession of what appeared to be a shotgun on surveillance footage on the day of the incident." Further, the affidavit stated "Mills' wife was in a dating relationship with [Defendant] and advised detectives [Defendant] maintains firearms on his person and/or in his vehicle/home." And Detective Garcia included in the affidavit that Mr. Mills observed Defendant using a firearm to shoot at his car the day of the incident.

Defendant focuses on the statements in the search warrant that Mr. Mills's wife stated Defendant was known to carry firearms but

> [i]t is unclear from Detective Garcia's affidavit when and

> to whom [Mr. Mills's wife] said Defendant kept firearms in his home, and her statements on their face fail to raise a reasonable inference that firearms would be found in . . . Defendant's home. Detective Garcia's affidavit is completely devoid of any evidence as to if or when [Mr. Mills's wife] observed any firearm ever in Defendant's home.

But Mr. Mills's wife's statements about Defendant's ownership of firearms was only one relevant fact – although its relevance may be higher since Defendant was also a convicted felon who was violating the law by merely possessing the firearms. Defendant's argument overlooks the fact that *Mr. Mills* saw Defendant with a gun and ended up with a bullet hole in his car when Defendant shot at his vehicle on 15 February. We must consider the "'totality of the circumstances' test to assess whether probable cause exists for the issuance of a search warrant[,]" as this Court noted in *State v. Boyd:*

> In the present case, the unchallenged statements in the affidavit show that 20 different sources contacted police over a six-month period to complain about criminal activity occurring in the Wilson Street residence; two months' surveillance of the residence revealed substantial coming and going by individuals who stayed at the house only for very short periods of time; a confidential informant submitted to a full search by officers, made a controlled buy of cocaine at 809 Wilson Street, and returned with cocaine that he promptly gave to the police; and the confidential informant identified [the] defendant as the individual who had sold him the cocaine. Taken as a whole, this information, set forth in the challenged affidavit, is sufficient to support the conclusion that probable cause existed to search [the] defendant and the Wilson Street residence.

> While the unusual traffic at the residence was not sufficient, by itself, to constitute probable cause, the additional evidence regarding the controlled buy by an informant under surveillance of the officers was sufficient to support issuance of the search warrant. . . . Contrary to [the] defendant's argument, it was unnecessary, under these facts, for the State to make any showing addressing the credibility and reliability of the informant.

*State v. Boyd*, 177 N.C. App. 165, 169-70, 628 S.E.2d 796, 801 (2006) (citations omitted).

Here, according to the affidavit in support of the search warrant, Detective Garcia saw footage of the incident which occurred days before the affidavit and saw footage of Defendant, a convicted felon, as was also noted in the affidavit, with a shotgun on video; and Mr. Mills's first-hand account of Defendant shooting at him from Defendant's car was corroborated by the text message sent shortly after the incident from Mr. Mills to his wife and by the bullet hole in his car. Thus, there was sufficient information in the affidavit to conclude there was probable cause incriminating items may be found in Defendant's house or the Range Rover he was driving when he shot at Mr. Mills. Defendant was known to "have a black 12-gauge Mossberg shotgun" and he "usually carrie[d] a black .40 caliber handgun[.]" It was reliably reported that he used a firearm to shoot at Mr. Mills's car, and the house searched belonged to Defendant. Under a "common sense" reading of the entire affidavit, there was probable cause to believe items involved in the crime could be found in Defendant's house. *Teague*, 259 N.C. App. at 911, 817 S.E.2d at 244

(citations, quotation marks, and brackets omitted). Unlike *Brown*, Detective Garcia did not "fail[ ] to state the time the informant's observations were made." *Brown*, 248 N.C. App. at 80, 787 S.E.2d at 87 (ellipses omitted). And unlike *Newcomb*, Detective Garcia did not "fail[ ] to provide the magistrate with sufficient information from which to find probable cause, fail[ ] to conduct any independent investigation, [or] provide[ ] a bare-bones affidavit[.]" *Newcomb*, 84 N.C. App. at 96, 351 S.E.2d at 567. This argument is overruled.

## C. Facts Supporting the Affidavit

Defendant next argues "Detective Garcia's affidavit lacked information to establish that he relied on information from known and reliable informants" and "Detective Garcia's affidavit lacked information that the informants' information was independently verified." We disagree.

### 1. Known and Reliable Informants

Defendant first contends "Detective Garcia's affidavit lacked information to establish that he relied on information from known and reliable informants."

> Probable cause can be established through the use of informants. In utilizing an informant's tip, probable cause is determined using a 'totality-of-the circumstances' analysis which 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip. A known informant's information may establish probable cause based on a reliable track record, or an anonymous informant's information may provide probable cause if the caller's information can be independently verified.

*State v. Chadwick*, 149 N.C. App. 200, 203, 560 S.E.2d 207, 209 (2002) (citations omitted). "Even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *State v. Smothers*, 108 N.C. App. 315, 318, 423 S.E.2d 824, 826 (1992) (citation, quotation marks, and brackets omitted).

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Id.* (citations, quotation marks, brackets, and ellipses omitted).

Defendant relies on cases dealing with anonymous or confidential informants, and those cases are simply not applicable to this case. He relies on *State v. Benters*, 367 N.C. 660, 766 S.E.2d 593 (2014), to assert Mr. Mills and his wife "could not be considered confidential and reliable informants." However, *Benters* differs from this case since in *Benters* the information in the affidavit was from an anonymous tip and "the officers' corroborative investigation was qualitatively and quantitatively deficient, and the affidavit's material allegations were uniformly conclusory." *Id.* at 661, 766 S.E.2d at 595.

Here, the tip was not anonymous; the tip was a complaint from Mr. Mills, who

reported that he was the victim of the crime of shooting into an occupied vehicle. He provided his identity and his wife gave police video footage from the incident. Detective Garcia investigated the report and obtained an arrest warrant for Defendant for shooting into an occupied vehicle on 15 February 2022. Unlike *Benters*, Detective Garcia was able to assess the reliability of both Mr. Mills and his wife as they were not anonymous tipsters. *See id.* There was also a bullet hole in Mr. Mills's vehicle and a contemporaneous text message from Mr. Mills to his wife explaining Defendant had just shot at his car, which corroborates the information given to Detective Garcia by Mr. Mills and his wife. Detective Garcia included this information in his affidavit. The affidavit established sufficient reliability and corroboration of the information and this argument is overruled.

### 2. *Verification of the Information*

Finally, Defendant argues "Detective Garcia's affidavit lacked information that the informants' information was independently verified." Defendant contends "[t]he alleged shooting was not captured on camera, no video surveillance footage showed Defendant driving a white Range Rover or following Mr. Mills['] vehicle, and when Mr. Mills' vehicle was processed by law enforcement, no projectile was found." We disagree.

Defendant's characterization that a projectile was not found is misleading. Our record includes a picture of a bullet hole in the back of Mr. Mills's car, and the affidavit stated investigators "processed [Mr.] Mills' vehicle but were unable to

retrieve the projectile due to it being buried in the trunk liner." The affidavit also expressly states there was video footage from before the shooting that showed Defendant on camera "violently kicking [Mr. Mills's wife's] front door." The affidavit states Mr. Mills "observed [Defendant] appear in his White Range Rover behind him" and Defendant "fired at his vehicle approximately 3 times from behind[.]" Detective Garcia also stated in the affidavit that detectives viewed the video footage themselves and thus Detective Garcia did not solely rely on either Mr. Mills or his wife for an account of what the video footage showed.

Defendant essentially argues that if there isn't video footage of him following Mr. Mills or shooting at him, there isn't sufficient verification of the information from the informants. But there is no such requirement for video verification of an informant's report of a crime, nor could there be. In fact, video footage is not necessary in any criminal case and is not part of the evidence in most cases. The shooting was not captured on camera and there was no video surveillance of Defendant in a white Range Rover, but there was video surveillance of Defendant kicking in Mr. Mills's wife's front door "just prior to the shooting." This video corroborates Mr. Mills's wife's report that Defendant was at her home at this particular time and that he was inclined to violence toward anyone in the home. Mr. Mills identified Defendant as driving the white Range Rover behind him during the shooting. Mr. Mills sent a text message to his wife right after the shooting explaining what occurred. Police did not recover the projectile, but they found a bullet hole in

Mr. Mills's car. Defendant argues "[n]o evidence from law enforcement set forth in Detective Garcia's affidavit corroborated Mr. Mills' statements[,]" but the evidence discussed above does corroborate Mr. Mills's statements; thus, there was sufficient information verified by Detective Garcia to support probable cause. *See State v. Sinapi*, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005) ("*Probable cause is a flexible, common-sense standard.* It does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability is all that is required." (emphasis in original) (citations and quotation marks omitted)). This argument is overruled.

## IV. Conclusion

Defendant has failed to establish the affidavit submitted by Detective Garcia did not contain sufficient information showing probable cause to search the Range Rover and Defendant's house. We affirm the trial court's Order.

AFFIRMED.

Judges GRIFFIN and FLOOD concur.